**Derrick Kmoure HULLABY, Appellant,**

v.

**The STATE of Texas, State.**

**Nos. 2–93–510–CR, 2–93–511–CR.**

Court of Appeals of Texas,
Fort Worth.

Dec. 14, 1995.

Discretionary Review Refused
March 6, 1996.

924

Gary Medlin, Fort Worth, Cindy Stormer, Mansfield, for Appellant.

Tim Curry, Criminal District Attorney; Betty Marshall and Charles M. Mallin, Assistant Chiefs of the Appellate Section; Renee Harris, and Terri Moore, Assistant Criminal District Attorneys, Fort Worth, for Appellee.

Before CAYCE, C.J., and LIVINGSTON and CHUCK MILLER (Sitting by Assignment), JJ.

## OPINION

CHUCK MILLER, Justice (Sitting by Assignment).

Appellant, Derrick Kmoure Hullaby, was convicted by a jury of two offenses of attempted murder arising out of a drive-by shooting in the Stop Six area of Fort Worth, Texas. *See* TEX.PENAL CODE ANN. §§ 15.01, 19.02 (Vernon 1994). The jury assessed his punishment at confinement for 18 years in the Texas Department of Criminal Justice, Institutional Division. Appellant challenges the verdict and the punishment of both cases in ten points of error.

### FACTUAL BACKGROUND

On September 29, 1992, Curtis Hicks, a member of a gang known as the "Crips", stopped in a classroom door at Dunbar High School and "threw" (made) hand signs at Quincy Jones, a member of a rival gang known as the "Truman Street Bloods." To Quincy, the hand signs—"Blood Killer"— were a form of disrespect to his gang. In the street vernacular, Curtis was "dis'n" him, and inviting him to fight. Quincy responded by trying to fight Curtis, but faculty members broke it up and the boys were sent to the principal's office to talk things out.

After school that day, Curtis was at the home of another Crip gang member, Jimmy Brown. Curtis was also known as "Little C." Jimmy lived with his mother and her boyfriend on Dillard street, which happened to be in the Bloods' territory. Jimmy and Curtis were in the front yard of the Brown house when three cars stopped in the street in front of the house. The first car was driven by Quincy Jones with Pat Jones (no relation) as passenger; Tyrone Washington drove the second car and Appellant was his passenger. It is unclear who was in the third car, but Quincy admitted on cross examination Johnny Singleton was in the third car, with as many as three other people.

Quincy testified he was driving around when he came across Tyrone, Pat, and Appellant. Tyrone testified he met Appellant at a convenience store and Appellant asked for a ride. Quincy testified Tyrone told about being shot at by a member of the Crips, so they were "looking for a Crip." Someone mentioned seeing "little C" down the street and they headed their cars down Dillard. When Curtis saw Quincy, he "dis'd" him with hand gestures. Quincy got out of his car and stepped to the rear of it, in front of Tyrone's car. Pat had given Quincy a .45 automatic that he put in his right rear pocket. There was more argument, then gunfire erupted. Quincy testified Appellant opened fire on Curtis and Jimmy, while Tyrone stated Quincy fired at Curtis. Quincy admitted he tried to kill the two unarmed Crips, who immediately ran into the house. He fired at least four rounds, and thought shots also came from the third car. He also testified Appellant was firing a .22 semi-automatic, spraying the house from side to side with bullets. Tyrone testified there were also shots being fired by Pat, but Quincy stated Pat only fired one round with the .45 after Quincy stopped shooting and got back in the car. The group then drove away.

Fortunately, no one in the house was injured, although shots came close to Curtis and Jimmy, and one shot struck the door frame over Mrs. Brown's head as she came into the house from the back yard. Police collected 16 shell casings from the street. Jimmy testified he thought there were 25 or

more rounds fired. He also identified Appellant as one of the gunmen. Curtis Hicks, who had started the argument at school, did not testify as he had fatally shot himself December 29, 1992.

When initially questioned by the police, Jimmy refused to cooperate and insisted he did not know the gunmen. Tyrone testified he made a deal with the police to testify against Appellant in return for dismissal of juvenile delinquency charges against him.

## POINTS OF ERROR

In his seventh point of error, Appellant contends error occurred during jury argument at the guilt stage of trial when one of the prosecutors "was allowed to speculate as to what an unavailable State's witness might have testified to." During the State's opening jury argument at guilt/innocence, the prosecutor had been arguing that although the witnesses against Appellant were present or former gang members, they could still be believed as telling the truth about the shooting. She went on to say:

> And just because Curtis is dead and is not up here to tell you what happened out there doesn't make any difference. The same witnesses would appear even if Curtis were alive, only you would have the benefit of hearing Curtis saying that he was throwing signs, too.

Defense counsel objected to the speculation on what Curtis might have said as outside the record. The objection was sustained and the jury was promptly instructed to disregard the prosecutor's last statement. No request for mistrial was made, and the State did not return to the speculative argument. Appellant received all the relief he requested and nothing is presented for review. *Cook v. State,* 858 S.W.2d 467, 473 (Tex.Crim.App. 1993). Point seven is overruled.

In his eighth point of error, Appellant contends the trial court erred in admitting, at the punishment stage, evidence that Appellant had pled guilty to the offense of unlawfully carrying a weapon. The weapons offense occurred prior to the Dillard Street shooting. Appellant pled guilty and was placed on probation, although by that time he had already been charged with the commission of the offenses before us. Appellant admits the existence of the prior probation

may have been relevant to the question of whether he was a suitable candidate for probation in the cases at bar, but argues the prejudicial impact greatly outweighed the probative value of that information. *See* TEX. CODE CRIM.PROC.ANN. art. 37.07 § 3(a) (Vernon Supp.1995). We note it is irrelevant under 37.07 whether or not the conviction is final. We also note that the defendant's father testified under cross-examination that his son was on probation for unlawfully carrying a weapon and that he did not condone such activity. No timely objection was made to the father's testimony concerning the extraneous offense, thus error, if any, is rendered harmless. *Mayes v. State,* 816 S.W.2d 79, 88 (Tex.Crim.App.1991). Point of error eight is overruled.

In his first point of error, Appellant alleges the trial court erred in admitting evidence at the punishment phase of trial that the purpose of the existence of the Truman Street Bloods was to make money selling drugs. We have examined the record and found no objection preserved for review. Some type of objection was made by defense counsel, but at that point the attorneys approached the bench and whatever discussion was held there was not recorded. It profited us nothing when counsel objected the second time State's counsel asked Officer Young the purpose of the Bloods when defense counsel stated: "Objection as I stated at the bench." Parties are required to make specific objections on the record, giving grounds for the ruling they wish the court to make. TEX. R.APP.P. 52(a). Absent an objection on the record, we cannot assess the propriety of the trial court's ruling. Point of error one is overruled.

In his second point of error, Appellant contends the trial court committed reversible error in denying Appellant's motion for continuance. Appellant sought a continuance due to adverse local publicity. On October 24, 1993, two days before trial, the *Fort Worth Star Telegram* published a front page story about a gang-motivated drive-by shooting in which two innocent people were killed by mistake. Appellant argued to the trial court that the recent publicity concerning the fatal shootings would prejudice him. These

facts are similar to those in *Lopez,* and we find the Court of Criminal Appeal's opinion in that case to be instructive:

> In his final ground of error appellant argues that the trial court erred in failing to grant a pre-trial motion for continuance. The motion argued that a delay should be granted because of publicity of a case in Travis County where a student allegedly shot and killed his junior high school teacher. Appellant contends that this adverse publicity tainted the jury panel.
>
> The motion was urged before the selection of the jury, but no witnesses were heard in support of the contentions advanced. Counsel for appellant also stated to the trial court that he would re-urge the motion during voir dire if it appeared that the incident tainted the jury panel. We find no evidence that the motion was subsequently raised and the record shows that upon request of appellant's counsel, the voir dire examination was not typed and included in the record.
>
> Included in appellant's written motion was a copy of a newspaper article concerning the Travis County incident. Appellant's name did not appear in the clipping and there is no showing that any of the prospective jurors read and were prejudiced by the article. *Chamberlain v. State,* 453 S.W.2d 490 (Tex.Cr.App.). The motion was addressed to the discretion of the trial court and no abuse of that discretion has been demonstrated. *Nelson v. State,* 505 S.W.2d 271 (Tex.Cr.App.).

*Lopez v. State,* 628 S.W.2d 77, 80–81 (Tex. Crim.App. [Panel Op.] 1982). Our facts are similar. No evidence other than the newspaper clipping was presented in support of the motion for continuance. The newspaper article did not discuss appellant or his case. In our case, however, the voir dire examination was transcribed. There is nothing in the questioning of the prospective jurors that shows any juror was even aware of the similarity of the shootings, much less was prejudiced by the media coverage or had formed an opinion of Appellant's case because of the news. In fact, no one raised in voir dire the

topic of the recent drive-by killings in any manner.

■ "The granting of a motion for continuance is within the discretion of the trial court.... See Article 29.03 V.A.C.C.P. (criminal action *may* be continued upon sufficient cause shown in motion)...." *Cooks v. State,* 844 S.W.2d 697, 725 (Tex.Cr.App.1992); *see also McGinnis v. State,* 664 S.W.2d 769, 771–2 (Tex.App.—Amarillo 1983, no pet). We have not found in the record any abuse of discretion by the trial court in denying Appellant's motion for continuance. Point of error two is overruled.

■ In his third point of error, appellant contends the trial court erred in failing to sustain his objection to "improper jury argument" which referred to gang violence. The objectional statement was made by one of the prosecutors in her first sentence of the State's opening statement at guilt/innocence.

> Ladies and gentlemen, on the 29th day of September in 1992, on Dillard Street, an area on the east side of town that we call Stop Six, the Defendant, Derrick Hullaby, gave us a sample that day of what gang violence is like in Tarrant County.

Appellant objected that the prosecutor was arguing, not presenting what the State expected the evidence to prove. The trial court overruled the objection, but cautioned the prosecutor to "talk about what you expect the evidence to be...." On appeal, appellant argues the statement did not fall within one of the four permissible areas of jury argument, citing *Alejandro v. State,* 493 S.W.2d 230 (Tex.Crim.App.1973), and urging us to use the harm analysis found in *Garrett v. State,* 632 S.W.2d 350, 353–4 (Tex.Crim. App. [Panel Op.] 1982).

Appellant and the State's trial prosecutor confused opening *statement* with jury *argument.* What the prosecutor said was indeed argument, not "the nature of the accusation and the facts which are expected to be proved by the State ...," which is the proper subject of the opening statement in a trial.[1] TEX.CODE CRIM.PROC.ANN. art. 36.01(a) (Vernon Supp.1995). Evidence was subsequently

---

1. Unless, of course, the State wishes to concede it was trying to prosecute Appellant *for being a*　　*gang member.*

admitted to support the State's position that the Appellant's actions were motivated by his membership in a local gang and were typical of gang attitudes and activities. It would appear that once such evidence is presented to the jury, it removes any error there may have been in the making of the opening statement. *See Banks v. State,* 643 S.W.2d 129, 133 (Tex.Crim.App.1982), *cert. denied,* 464 U.S. 904, 104 S.Ct. 259, 78 L.Ed.2d 244 (1983).

■ Moreover, the question to be asked when faced with error in the opening statement is whether the statements so prejudiced the jury that they denied the defendant a fair trial. *Manning v. State,* 864 S.W.2d 198, 204 (Tex.App.—Waco 1993, pet. ref'd). Appellant asserts the test to be used is "whether there is a reasonable possibility that the argument complained of might have contributed to the conviction or the punishment assessed." That, however, is the test used in determining whether a closing jury *argument* contained harmful error. *Garrett,* 632 S.W.2d at 353–4. After examining the record at trial, we hold that although the erroneous opening statement set the tone for the rest of the trial, including the eventual introduction of other evidence concerning gang activities, the opening statement did not so prejudice the jury that the defendant did not get a fair trial. Point three is overruled.

■ In his fourth point of error, Appellant contends the trial court erred in failing to sustain his objection to exempting a police officer from "The Rule."

At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order on its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a defendant which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause, or (4) the victim, unless the victim is to testify and the court determines that the victim's testimony would be materially affected if the victim hears other testimony at the trial.

Tex.R.Crim.Evid. 613. The Rule was invoked by defense counsel before witnesses were sworn. The State argued that Fort Worth Police Officer Herman Young was exempt from the Rule because he was an expert witness, stating:

[W]e request that he be exempted from the Rule, inasfar that he be allowed to remain in the courtroom and observe the testimony of the other witnesses. We believe that being an expert witness, that is an exception.

Defense counsel argued the Rule did not provide for such an exception, and that there was no need for Officer Young to hear the other witnesses testify in order to give his expert opinion. The court asked the State to explain Officer Young's testimony. "Is he going to translate some of this [gang slang]?"

[Prosecutor]: Yes, your Honor. And contrary to what [Defense Counsel] says, we expect to call him to explain some of the testimony of the witnesses, which is why we are asking him to stay in while they talk about gang stuff, and to observe them to (sic) testify.

The court overruled the objection and allowed the witness to remain in the courtroom.

Since the trial judge gave no specific reason for his ruling allowing the police expert to remain in the courtroom after the "rule" had been invoked, we will look to the record to see if that decision was permitted by the rule. We find guidance in *Moore v. State,* 882 S.W.2d 844, 847–48 (Tex.Crim.App.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 909, 130 L.Ed.2d 791 (1995) and in Rule 613 itself.

■ By its own terms, part (3) of the rule allows a witness essential to the presentation of a party's case to remain; and in fact the court is "not authorized" to exclude such a witness. In *Moore* the trial judge allowed the State's expert to remain in the courtroom to hear the testimony of the defense expert witness and vice versa for reasons of "expediency." The Court of Criminal Appeals noted that enforcement of Rule 613 is mandatory rather than discretionary and found that "expediency" was not one of the enumerated exceptions to excluding a witness. In a foot-

note, however, they pointed out that the trial court "could probably have lifted the 'rule' for the expert witness because he qualified as a person whose presence [could be] shown by a party to be essential to the presentation of his cause." *Moore*, 882 S.W.2d at 848 n. 5. The court further noted that an expert who could aid counsel during testimony of another expert that required his expertise to fully understand the testifying witness is such a person in a situation contemplated by Rule 613(3). *Id.;* 2 John W. Strong, *McCormick on Evidence* § 50 at 190 (4th ed. 1992).

■ Although *Moore* noted that application of Rule 613 is now mandatory rather than discretionary, other cases have made it clear that the trial judge will be given discretion to decide just when a witness fits under one of the four exceptions to exclusion. *See Martinez v. State*, 867 S.W.2d 30, 40 (Tex. Crim.App.1993), *cert. denied*, — U.S. —, 114 S.Ct. 2765, 129 L.Ed.2d 879 (1994).

■ It was of course the State's burden, as the party seeking exemption from the rule for a witness, to establish that the officer's presence was essential to the presentation of its case. *Moore*, 882 S.W.2d at 848; *Barnhill v. State*, 779 S.W.2d 890, 892 (Tex.App.— Corpus Christi 1989, no pet.). In *Barnhill* the State simply asked that its case worker be allowed to remain under Rule 613(3) and later testify without presenting any evidence showing that he was exempt from the Rule. The appeals court found this to be error because there was no evidence to show that the witness qualified for the exception. *Id.* at 892–93.

We believe that the present case is factually distinguishable from *Barnhill*, and that under the guidance of *Moore* and *Martinez* the trial judge acted within his discretion. From the dialogue between the judge and the prosecutor set out above, it seems clear that the State was seeking the presence of the witness to hear and interpret the meaning of "gang" slang and symbolism; it being apparent that some such slang and symbolic gestures/signs do not have a meaning that is readily discernable by the uninitiated. This fact situation is one of the scenarios that part (3) of the rule contemplates, we believe. Thus, we hold that the trial judge did not abuse his discretion in (presumably) deter-

mining that the State's expert witness fit the exception of Rule 613(3), and thus he was justified in not excluding the expert witness from the courtroom. Point of error number four is overruled.

■ In his ninth point of error, Appellant contends the evidence was insufficient to prove he intended to kill either Curtis or Jimmy. He argues the evidence was disputed whether Appellant was a gang member and the testimony of the witnesses is not credible because of their belligerence and status as gang members. He also asserts Appellant was "waiving his gun in the air and not aiming it at anyone" and that the "only holes in the house" came from a large caliber weapon such as the .45 Quincy fired.

■ The sufficiency of the evidence is a question of law. The issue on appeal is not whether we as a court believe the State's evidence or believe that the defense's evidence outweighs the State's evidence. *See Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim.App.1991); *Wicker v. State*, 667 S.W.2d 137, 143 (Tex.Crim.App.), *cert. denied*, 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson*, 819 S.W.2d at 846.

■ In determining the sufficiency of the evidence to show appellant's intent, and faced with a record that supports conflicting inferences, we "must presume—even if it does not affirmatively appear in the record— that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution." *Matson*, 819 S.W.2d at 846. "The specific intent to kill may be inferred from the use of a deadly weapon." *Garcia v. State*, 887 S.W.2d 862, 869 (Tex.Crim.App.1994), *cert. denied*, — U.S. —, 115 S.Ct. 1368, 131 L.Ed.2d 223 (1995).

■ Our examination of the record reveals Appellant was firing his semi-automatic weapon from side to side at the house after Curtis and Jimmy ran inside. Witnesses estimated 25 shots were fired, and police recovered 13 .22 shell casings from the street. There were at least 6 distinct holes

in the front of the house, and .22 slugs were recovered from a chair cushion in the living area and from above the kitchen door frame where Mrs. Brown had been.

The jury may infer the intent to kill from the use of a deadly weapon unless it would not be reasonable to infer that death or serious bodily injury could result from the use of the weapon. *Godsey v. State,* 719 S.W.2d 578, 581–82 (Tex.Crim.App.1986). And in determining the sufficiency of the evidence, the evidence must be viewed in the light most favorable to the verdict to decide whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Dunn v. State,* 819 S.W.2d 510, 513 (Tex. Crim.App.1991); *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

*Ross v. State,* 861 S.W.2d 870, 873 (Tex.Crim. App.1992).

Even assuming Quincy was the one who opened fire and not Appellant, any rational jury could still have found Appellant's actions evidenced his intent to kill. Appellant may not have known how many people were in the house, and it may be argued that he should not have anticipated their presence, but he *did* know Curtis and Jimmy had sought shelter there and were in danger of being hit and killed by the many shots Appellant fired. We overrule point of error nine.

▇▇▇▇ In his fifth point of error, Appellant contends the trial court erred in admitting evidence of retaliation. The point of error further states that the trial court erred "in failing to sustain Appellant's objection to testimony concerning what gang members do in situations which did not relate to the actions for which Appellant was on trial for."

We set out verbatim the testimony at issue:

[PROSECUTOR]: Q. When a Crip signs on you and you are a Blood member, what do y'all do?

[DEFENSE COUNSEL]: Objection, Your Honor, to what happens in other situations.

THE COURT: I'll overrule the objection, let him answer the question.

[PROSECUTOR]: Q. In your little gang sign and that's dis'in you, right?

A. Yes.

Q. Well, if a Crip gang member fires at a member of the Bloods, what do the Bloods do?

A. Retaliate.

[PROSECUTOR]: Pass the witness, Your Honor.

Appellant's trial objection was minimally sufficient to raise the issue of relevancy. Appellant's argument on appeal, however, is that it was error to admit the evidence under Tex. R.Crim.Evid. 404(b) because it related to an extraneous offense. Where the objection at trial differs from the objection on appeal, nothing is preserved for appellate review. *Wheatfall v. State,* 882 S.W.2d 829, 836 (Tex. Crim.App.1994).

▇▇▇▇ Additionally, there was no objection raised when Officer Young was asked what a gang or gang member would do if they were shot at by a member of another gang. He replied that they would retaliate. Error regarding improperly admitted evidence is waived if the same evidence is brought in later without objection, except when evidence is brought in to meet, rebut, destroy, deny, or explain improperly admitted evidence. *Rogers v. State,* 853 S.W.2d 29, 35 (Tex.Crim.App.1993).

Point of error five is overruled.

▇▇▇ In his sixth point of error, Appellant contends the trial court erred in admitting evidence Appellant was a gang member. Quincy Jones was the first witness called by the State. When he stated Appellant was a member of the Truman Street Bloods, defense counsel requested:

Your Honor, on this point may we have running objections without voicing them every time?

The trial court granted the request. There is no substantive objection in the record, no discussion of why Quincy's statement should not have been admitted, thus we cannot determine if the trial court erred at that point. Tex.R.App.P. 52.

Later in the trial, Officer Young was called to testify. The prosecutor asked Officer Young if it was part of his business to determine "who is claiming a particular gang." Officer Young stated that it was, and proceeded to state which gang the previous

State's witnesses "claimed" as their own. Each time the prosecutor asked another name, defense counsel raised a hearsay objection. The same objection was raised when he was asked what gang Appellant was claiming.

On appeal, Appellant appears to argue evidence of gang membership should not have been admitted because these "prejudicial statements" are attempts to improperly convict Appellant because of the character of his associates. If Appellant is arguing the evidence violated TEX.R.CRIM.EVID. 404, he failed to make that objection at trial. Because the objection at trial was "hearsay" and not Rule 404, any error is waived. *Wheatfall*, 882 S.W.2d at 837.

 It appears Appellant is also complaining under this point that Officer Young should not have been allowed to testify to information about gang membership without revealing his personal basis for that information. Hearsay is defined as

> a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

TEX.R.CRIM.EVID. 801(d). Officer Young stated Appellant was "claiming" the Truman Street Bloods. If Officer Young's statement was based on non-verbal conduct such as the wearing of gang colors, that conduct would be hearsay. TEX.R.CRIM.EVID. 801(a).

However, statements made by a party and used against that party are expressly removed from the definition of hearsay, and thus would not be excludable on that basis. TEX.R.CRIM.EVID. 801(e)(2). Point of error six is overruled.

In his tenth point of error, Appellant contends the trial court "committed reversible error in allowing a cumulation of prejudicial and improper evidence of gang activity to be admitted at trial and to be commented upon by the prosecutors." Appellant filed a pre-trial Motion in Limine to exclude evidence Appellant was involved in gang activity. The motion was denied. Appellant contends the cumulative effect of the numerous references to gang violence, drug-related activity by gangs, property damage and vandalism by gangs, and the large number of gang members in the Fort Worth area raised a frightening specter of rampant crime that was connected to Appellant only by virtue of his allegedly being a gang member. Such error, Appellant argues, denied Appellant due process of law and requires reversal, citing *Bethany v. State*, 814 S.W.2d 455 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd).

In view of our disposition of the foregoing points of error, we overrule point of error number ten. Our holding under the particular facts of this case should not be seen as an endorsement of the State's strategy of introducing numerous references to gangs and alleged gang activity, which the State claims is relevant to explain motive and context of the offense at bar, but which the State circuitously asserts is not prejudicial to the defendant since it was not connected to him. Such blatant attempts to circumvent TEX.R.CRIM. EVID. 404 are not looked upon with favor by this court.

We overrule Appellant's points of error and affirm the judgments and sentences below.