**Opinion issued October 22, 2019**



In The

# Court of Appeals

For The

# First District of Texas

―――――――――――――

## NO. 01-18-00586-CR

―――――――――――――

**LEROY PHILLIP MITCHELL, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 506th District Court**
**Waller County, Texas**
**Trial Court Case No. 15-04-15198**

---

# O P I N I O N

A jury convicted appellant, Leroy Phillip Mitchell, of murder[1] and assessed

punishment at 55 years' confinement. In two issues on appeal, appellant contends

---

[1]    *See* TEX. PENAL CODE § 19.02

that (1) the trial court abused its discretion when it allowed a State's witness to remain in the courtroom in violation of "The Rule" found in Texas Rule of Evidence 614 and (2) the evidence is legally insufficient to support the jury's rejection of his self-defense claim. We affirm.

## BACKGROUND

On February 3, 2015, Tale Brisker was shot and killed in his Prairie View apartment. At the time of the incident, several people lived in Brisker's apartment, including Devante Miller, William "Paco" Gongoria, and two individuals known as "EO" and "Uncle Nick." Aleshia Cooley, Brisker's girlfriend, was visiting and staying with Brisker at the time of the events. Appellant did not live in the apartment, but he was "always there." Miller admitted that he and Paco sold enough marihuana out of the apartment "to live on." The area was located in a "high-crime" neighborhood, and the apartment had previously been robbed, so the occupants kept a "house gun." Brisker did not get along with his roommates, and he was described by Miller as an "asshole" that "tried to big boy everybody, even though he was younger."

Cooley and Miller testified to the events surrounding Brisker's murder, and they each gave somewhat different versions of the event.

Cooley stated that she and Brisker intended to look for another apartment that day because Brisker and his roommates' "personalities weren't mixing." Cooley

2

claims that, on the morning of the murder, Brisker left her at the apartment to retrieve shoes from his friend. While Brisker was gone, Cooley overheard Miller on the phone calling Brisker a "show off" and saying that "he was going to have someone come up there and make an example out of him."

After Brisker returned to the apartment, Cooley claims that the two of them left the apartment to go look for a new apartment. When Cooley and Brisker got into their car, Brisker realized that he needed gas and his credit card to pay for it. Cooley waited in the car while Brisker went back into the apartment to retrieve his credit card. Cooley testified that, while waiting in the car and talking on the phone with her brother, she heard a gunshot. She hung up the phone and then heard another gunshot. Cooley jumped into the driver's seat of the car because she was going to drive away, but then decided to stay because Brisker was still in the apartment. Cooley saw someone she did not know leave the apartment, then jog back in, and then leave the apartment again. The person she saw met up with someone outside and then ran away laughing. Several other people then came out of their apartments, but Brisker did not.

The shooting itself was witnessed by Devante Miller, appellant's friend and Brisker's roommate. Miller stated that, early that morning, he was sleeping on the sofa when he awoke to the noise of Paco weighing marihuana in the kitchen. He testified that Brisker came out of his room and confronted Paco about the noise,

3

which resulted in an argument. Afterwards, Miller went upstairs to continue sleeping. Around noon, Miller came back downstairs, and appellant, who was visiting, complained about Brisker slamming the front door. Appellant was annoyed that he had to get up and close the front door after Brisker had slammed it.

A little after noon, both appellant and Miller were in the living area when Miller heard a sound like the cocking of a gun coming from Brisker's bedroom. Appellant did not hear the sound of a gun cocking, and when Miller said something, appellant responded that Brisker "ain't about to do nothing."

Miller testified that, when Brisker came out of his room, appellant confronted him about slamming the door. Appellant said, "Hey man, you made me get up and close the door after you slammed it," to which Brisker responded, "Man, I didn't slam no door." The argument became physical and "turned into wrestling." Miller testified that Brisker ended up on top of appellant and slammed appellant down three times, "boom, boom, boom." Brisker let appellant go and declared, "If he ain't out of this house by the time I get back, I'm shooting everybody in here."

Miller testified that appellant then stood up, walked around the kitchen island, picked up the house gun, aimed it at Brisker, and fired. The shot passed through Brisker and hit Miller in the mouth. Miller ended up on the floor and began crawling towards the kitchen. Miller heard another gunshot and saw that Brisker had been hit in the stomach. Miller testified that he saw Brisker sliding on his back towards the

4

front door and that Brisker "told Paco that he couldn't feel his legs." Miller stated that appellant fled the apartment after those two shots, but seconds later walked back in and fatally shot Brisker at close range in the head.

A video on the exterior of the building corroborated Miller's testimony and showed appellant jogging out of the apartment, hesitating for a moment, then walking back into the unit. During a police interview, appellant admitted to firing three shots at Brisker, with the third shot to the head because Brisker "was moving."

## RULE OF EVIDENCE 614

In his first issue, appellant contends that "the Trial Court erred when it allowed Texas Ranger J. Owles to remain in the courtroom during the testimony of [State's witness Devante] Miller," in violation of Texas Rule of Evidence 614, known as "The Rule," which provides in part:

> At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony. Or the court may do so on its own. But this rule does not authorize excluding:
>
> * * * *
>
> (c) a person whose presence a party shows to be essential to presenting the party's claim or defense[.]

TEX. R. EVID. 614(c). The State responds that the trial court properly exempted Ranger Owles from the Rule because his presence was essential to the State's presentation of its case.

5

*Background*

Here, the parties invoked The Rule before opening statements. At the first break in the trial, during Cooley's testimony, the State moved to exclude Ranger Owles, from The Rule, arguing as follows:

> The State would ask that Texas Ranger [J.] Owles be designated as our case agent for this particular case. We've worked with him extensively on this particular investigation. And we would ask him to be exempt from the Rule at least at a minimum for the next witness's testimony, Devante Miller, because [J.] as the crime scene investigator is the one that spoke to the witnesses, the one that looked at all the crime scene evidence; and his understanding of what Devante testifies to will be critical in terms of his understanding of the evidence and the facts.
>
> In addition, he's also the one that interviewed the defendant and the defendant's stories so I think he would need to have an understanding of that as well in relation to Devante's testimony.
>
> So I believe that exempting him to the Rule would be critical for us so that he can more informatively, if that's a word—present the evidence to the jury.

Defense counsel asked to take Ranger Owles on voir dire, and, during questioning, established that Ranger Owles was the lead investigator on the case and had discussed the case with the prosecutor "many times." He had listened to an interview with Miller but was not assisting the prosecution to "schedule witnesses and participate in key strategy and things like that." He agreed that he was a witness who would testify about "what [he] did and what [he] saw."

The prosecutor then questioned Owles and established that he was "the chief investigator [who] was called out to the scene and worked the actual crime scene."

6

He had had the "opportunity to go [to the crime scene] and have a look at all of that and form opinions about how this crime may have occurred[.]" He agreed that listening to Miller's testimony "would help [him] in communicating to the jury what [he] believe[s] the evidence shows and what the evidence is[.]"

The trial court then overruled appellant's objection to exempting Ranger Owles from the Rule and gave appellant a running objection to Owles's testimony.

*Applicable Law*

When a party invokes the Rule, or it is invoked on the court's own motion, the trial court orders witnesses to remain outside the courtroom. *Routier v. State*, 112 S.W.3d 554, 590 (Tex. Crim. App. 2003). There are exceptions to the Rule: the parties, *people who are shown to be essential to a party's case*, and generally the victim of the offense. *Id.*; *see* TEX. R. EVID. 614. The Rule is designed to prevent witnesses from altering their testimony, consciously or not, based on other witnesses' testimony. *Routier*, 112 S.W.3d at 590; *Webb v. State*, 766 S.W.2d 236, 239 (Tex. Crim. App. 1989). Under Rule 614, a party—here, the State—has the burden to show that its witness is one of those whose exclusion from the courtroom is not authorized by the Rule. *See Russell v. State*, 155 S.W.3d 176, 180 (Tex. Crim. App. 2005). The trial court will be given discretion to decide whether a witness fits under one of the exceptions to exclusion. *See Martinez v. State*, 867 S.W.2d 30, 40

7

(Tex. Crim. App. 1993); *Hullaby v. State*, 911 S.W.2d 921, 929 (Tex. App.—Fort Worth 1995, pet. ref'd).

*Analysis*

Appellant, citing *White v. State*, argues that the trial court abused its discretion in exempting Ranger Owles from the Rule because the State failed to meet its burden to show that his presence was essential to the presentation of its case. *See* 958 S.W.2d 460, 467 (Tex. App.—Waco 1997, no pet.). Specifically, appellant argues that "the State's proffered reasons were conclusory[.]"

In *White*, the State requested, and the trial court agreed, to exempt a Texas Ranger from the Rule, arguing that "his presence is necessary for the presentation of its case." *Id.* at 461 n.1. The court held that the trial court abused its discretion in exempting the Ranger from the rule based only on the comment that "his presence is necessary to the presentation of the State's case." *Id.* at 463. The court also noted that it could find no evidence in the record to show that the trial court carefully considered the "critical importance" or the impact of the Ranger's testimony and that the State's showing on the issue was "wholly inadequate." *Id.*

In *Allen v. State*, the State argued that its witness should be allowed to remain in the courtroom because she "had been previously designated as an outcry witness in other cases before the trial court." 436 S.W.3d 815, 823 (Tex. App.—Texarkana 2014, pet. ref'd). The State also argued that its witness needed to remain in the

8

courtroom because she was an expert. *Id.* The court of appeals held that simply noting that the witness was an "outcry witness" or an "expert" did not show that the witness's presence in the courtroom was essential to the presentation of its case. *Id.*

*White* and *Allen* stand for the proposition that the State does not meet its burden to show that an exemption is required by stating such as a conclusion or by simply labeling its witness as "necessary," an "outcry witness," or an "expert." *See also Russell*, 155 S.W.3d at 181 (holding that "designating a witness as a 'case agent' does not make a witness one whom the court may not exclude from the courtroom under Rule 614"); *see also Hendley v. State*, 783 S.W.2d 750, 752 (Tex. App.— Houston [1st Dist.] 1990, no pet.) (holding prosecutor's "one-sentence, conclusory statement that [probation officer] was essential" insufficient to meet State's burden to show witness's presence essential); *Barnhill v. State*, 779 S.W.2d 890, 892 (Tex. App.—Corpus Christi 1989, no pet.) (holding State failed to prove entitlement to exemption by arguing, "[W]e are entitled to have a case worker.").

In contrast, in *Bath v. State*, the trial court did not abuse its discretion in applying an exemption because "the prosecution explained that [the witness] was involved with the investigation of this case since the date of the offense; that he was the lead investigator for the prosecution and helped coordinate with all the law enforcement agencies; that he assisted the prosecution in preparing this case for trial; and that his assistance and expertise would be needed with numerous items of

evidence" to be presented at trial. 951 S.W.2d 11, 23 (Tex. App.—Corpus Christi 1997, pet. ref'd).

Similarly, in *Kelley v. State*, the trial court did not abuse its discretion by allowing the witness, a Texas Ranger, to remain in the courtroom, noting, "In the instant case, the prosecutor, under oath, establish the witness's connection with the case as the lead investigator, his expertise in certain fields, the number of evidentiary items to be offered and the expert witnesses to be called, and her need for the witness's assistance during trial." 817 S.W.2d 168, 172 (Tex. App.—Austin 1991, pet. ref'd); *see also Hullaby v. State*, 911 S.W.2d 921, 929 (Tex. App.—Fort Worth 1995, pet. ref'd) (holding no abuse of discretion in allowing police officer to remain in courtroom "to hear and interpret the meaning of 'gang' slang and symbolism"); *Tell v. State*, 908 S.W.2d 535, 543–44 (Tex. App.—Fort Worth 1995, no pet.) (holding no abuse of discretion in allowing defense investigator to remain in courtroom because "the defense relied on [his] investigation in preparing [] defense" and "trial court's order granting [the defendant's] pretrial motion for an investigator" gave rise to inference that investigator was necessary to defense).

Unlike *White* and *Allen*, this case does not involve a mere conclusory allegation by the State that Ranger Owles was necessary to its presentation or simply labeling him as a "case agent." Here, the trial court held a bench conference, outside the presence of the jury, that occupied 10 pages of the reporter's record. The hearing

10

included argument by both parties' counsel, as well as voir dire examination of the witness, Ranger Owles. Presented at this hearing was evidence that established Ranger Owles's connection to the State's case "as the crime scene investigator . . . the one that spoke to the witnesses, the one that looked at all the crime scene evidence; and [that] his understanding of what Devante testifie[d] to w[ould] be critical in terms of his understanding of the evidence and the facts." The prosecutor argued that exempting Ranger Owles would be critical in presenting its evidence to the jury. There was also evidence that Ranger Owles was the lead investigator, had been to the crime scene, and had met with the prosecutor on the case "many times." The prosecutor represented that Ranger Owles knew the State's strategy of the case and "that [he] [was] not going to change his testimony or his opinion based on what he hear[d] on direct examination or on cross-examination."

Because the State presented more than "mere conclusions" to the trial court, this case is more like *Bath* and *Kelley*, and not like *White* and *Allen*. As such, the trial court did not abuse its discretion in exempting Ranger Owles from the Rule.

Accordingly, we overrule issue one.

**SUFFICIENCY OF EVIDENCE ON REJECTION OF SELF-DEFENSE**

In issue two, appellant contends that "the State did not present legally sufficient evidence that [appellant's] actions were not justified." Specifically,

11

appellant argues that "[t]he State did not remove all reasonable doubt that [appellant] did not shoot Brisker in self-defense."

*Standard of Review and Applicable Law*

A person commits murder if it is shown that the person: (1) intentionally or knowingly causes the death of an individual; or (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE § 19.02(b)(1)–(2).

Self-defense is statutorily defined: "A person is justified in using deadly force against another: (1) if the actor would be justified in using force against the other under Section 9.31; and (2) when and to the degree the actor reasonably believes the deadly force is immediately necessary [.]" *Id.* § 9.32. Section 9.31 provides that "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." *Id*. at § 9.31.

The defendant has the initial burden to produce some evidence to support a claim of self-defense. *See Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). Once the defendant produces some evidence, the burden shifts to the State, which bears the ultimate burden of persuasion to disprove the raised defense. *Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991). Thus, to convict a defendant of murder after he has raised the issue of self-defense, the State is required to prove

the elements of the offense beyond a reasonable doubt and to persuade the jury beyond a reasonable doubt that the defendant did not kill in self-defense. *Zuliani*, 97 S.W.3d at 594; *McClesky v. State*, 224 S.W.3d 405, 409 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

We review the legal sufficiency of the evidence to support a jury's rejection of a self-defense claim under the *Jackson v. Virginia* standard. *Smith v. State*, 355 S.W.3d 138, 144 (Tex. App.—-Houston [1st Dist.] 2011, pet. ref'd) (applying standard to jury's rejection of self-defense claim); *see also Saxton*, 804 S.W.2d at 914 (distinguishing standard of review for defensive claims in which State bears burden of persuasion and affirmative defenses in which defendant bears burden of proof). Under that standard, we must examine all the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

In self-defense cases, we are required to review all the evidence presented at trial in the light most favorable to the verdict to determine if any rational trier of fact would have found the essential elements of the charged offense beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt. *Saxton*, 804 S.W.2d at 914. Further, the court must defer to the jury's determinations of the witnesses' credibility and the weight to be given their

13

testimony, as the jury is the sole judge of those matters. *Jackson*, 443 U.S. at 326; *Brooks v. State*, 323 S.W.3d 893, 899–900 (Tex. Crim. App. 2010). We must be mindful that self-defense is a fact issue to be determined by the jury and that the jury is free to accept or reject any defensive evidence on the issue. *Saxton*, 804 S.W.2d at 913–14.

*Analysis*

Appellant claims that the State "did not demonstrate beyond a reasonable doubt that [he] did not shoot Brisker in self-defense." In support, appellant points only to the evidence in his favor: (1) that Miller admitted that he had handled the gun used to shoot Brisker, (2) that Cooley indicated to a Waller County Sheriff's Office investigator, by clapping, that she heard three shots in rapid succession, not two, (3) that the Rangers did not "take any action to test theories about the sequence or timing of the shots that left Brisker dead," (4) that the medical examiner did not negate the defense theory that the shots were fired in self-defense, and (5) that the defendant, who was so upset that he defecated on himself, told a friend immediately after the shooting that Brisker was threatening him with a gun.

Here, the evidence was sufficient to support appellant's conviction for murder. While it is true that appellant and Brisker were "arguing" and "wrestling" before the shooting, and Brisker slammed appellant to the ground repeatedly, Miller saw Brisker let appellant go. Appellant then, instead of fleeing through an unblocked

14

side door, picked up a gun from the kitchen bar, pointed it at Brisker, and fired. Miller did not see Brisker with a gun, despite Brisker's earlier verbal threats "to shoot[] everybody in here."

Miller saw appellant fire two shots, and Cooley testified that she heard two shots. Miller saw appellant flee the apartment, only to return and fire a final shot into Brisker's head. Cooley, although unable to identify appellant as the man she saw leaving the apartment, testified that she saw a man leave the apartment, go back in, and then leave again. This corroborated Miller's testimony about appellant leaving and returning before firing his final shot at Brisker's head. Additionally, video evidence corroborates the eyewitness testimony. The video showed that appellant fled the scene of the shooting, returned to the scene, and then fled again. Finally, there was evidence that appellant admitted firing a third shot because Brisker was "moving."

Appellant was not entitled to use deadly force against an unarmed and injured man. *See Graves v. State*, 452 S.W.3d 907, 911 (Tex. App.—Texarkana 2014, pet. ref'd) (finding no evidence of self-defense when initial aggressor was shot only after he was in the process of backing away from defendant); *Sanchez v. State*, 418 S.W.3d 302, 310 (Tex. App.—Fort Worth 2013, pet. ref'd) (finding defendant "acted out of anger, not protective instinct, in pursuing the unarmed [complainant]"); *Wilson v. State*, No. 01-17-00788-CR, 2019 WL 346892, at *3 (Tex. App.—Houston

[1st Dist.] Jan. 29, 2019, pet. ref'd) (finding no evidence of self-defense when man was shot after stepping back and throwing his hands up after wrestling with defendant).

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt and could also have found against appellant on the self-defense issue beyond a reasonable doubt. *See* TEX. PENAL CODE ANN. § 9.32(a); *Saxton*, 804 S.W.2d at 914. As such, the evidence is legally sufficient to support appellant's conviction.

Accordingly, we overrule issue two.

## CONCLUSION

We affirm the trial court's judgment.


Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Keyes and Landau.

Publish. TEX. R. APP. P. 47.2(b).

16