NUMBER 13-97-876-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


____________________________________________________________________


GILBERTO CHAVERO, JR., Appellant,


v.



THE STATE OF TEXAS, Appellee.

____________________________________________________________________


On appeal from the 93rd District Court of Hidalgo County,

Texas.

____________________________________________________________________


O P I N I O N



Before Justices Hinojosa, Yañez, and Chavez(1)


Opinion by Justice Hinojosa



 A jury found appellant, Gilbert Chavero, Jr., guilty of the offense
of capital murder, and the trial court assessed his punishment at life
imprisonment. In five issues, appellant contends: (1) the evidence is
insufficient to support his conviction, (2) the statement he gave to police
was taken in violation of his Fifth and Sixth Amendment rights to
counsel, (3) he received ineffective assistance of counsel, (4) the
prosecutor engaged in improper jury argument, and (5) his extrajudicial
confession was not properly corroborated. We affirm.

A. Sufficiency of the Evidence


 In his fifth issue, appellant contends his "conviction should be
vacated and a judgment of acquittal entered because there was
insufficient evidence to establish all of the necessary elements for both
the underlying offense (aggravated sexual assault) and capital murder."

1. Factual Sufficiency Claim


 In his brief, appellant argues:

the evidence in this case is legally insufficient to show that
he caused the death of Iris Hidalgo while committing the
offense of aggravated sexual assault. Because the evidence
in this case against Appellant was obviously insufficient to
prove he was guilty of capital murder as alleged in the
indictment, the Appellant respectfully requests that this
court conduct a complete factual sufficiency [review] of this
case in accordance with established precedent. Jackson v.
State, 672 S.W.2d 801 (Tex. Crim. App. 1984); Clewis v.
State, 922 S.W.2d 126 (Tex. Crim. App. 1996); see also
Jones v. State, 922 S.W.2d 305 (Tex. Crim. App. 1996). 


We note that the Jackson case cited by appellant deals with a pre-Geesa analysis of whether every reasonable hypothesis was excluded. 
This is no longer valid law. See Geesa v. State, 820 S.W.2d 154, 160-61 (Tex. Crim. App. 1991) (rejecting standard of whether circumstantial
evidence excludes every reasonable hypothesis other than guilt of
defendant as standard of review for factual sufficiency). Further, the
Jones case cited by appellant does not exist; we find no case with this
citation.

 The proper remedy for a finding of legal insufficiency of the
evidence to support a conviction is an acquittal. Tibbs v. Florida, 457
U.S. 31, 39 (1982); Ladd v. State, 3 S.W.2d 547, 557 (Tex. Crim. App.
1999); Narvaiz v. State, 840 S.W.2d 415, 423 (Tex. Crim. App. 1992). 
The proper remedy for a finding of factual insufficiency of the evidence
is a remand for a new trial so that a second jury can evaluate the
evidence. Ladd, 3 S.W.2d at 557; Clewis, 922 S.W.2d at 133-34. With
respect to his sufficiency issue, appellant requests only "that this court
vacate the Appellant's sentence and enter a judgment of acquittal due
to insufficient evidence." Thus, appellant requests only the remedy for
legal insufficiency. 

 Appellant has neither briefed factual sufficiency as an appellate
issue, nor requested the proper relief. The Court of Criminal appeals
has recently held, in a case presented to it by appellant's appellate
counsel and using the identical language of this appeal, that a single
sentence requesting an appellate court to conduct a factual sufficiency
review, without any other reference to factual sufficiency or the
applicable standard, is inadequately briefed as to that issue. Cardenas
v. State, 30 S.W.3d 384, (Tex. Crim. App. 2000). We hold
appellant's claim that the evidence in this case is factually insufficient
is inadequately briefed and not properly before this Court. We will,
therefore, not address appellant's factual sufficiency claim.




2. Legal Sufficiency Claim


 We now address appellant's claim that the evidence is legally
insufficient to support his conviction because the State did not prove all
the elements of the underlying felony of aggravated sexual assault. 
Specifically, appellant asserts there is insufficient evidence to support
the State's claim that he murdered the victim while attempting to
commit an aggravated sexual assault on her. 

 When we review the legal sufficiency of the evidence, we look at
all the evidence in the light most favorable to the verdict to determine
whether any rational jury could have found the essential elements of the
offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307,
319 (1979); Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000);
Patrick v. State, 906 S.W.2d 481, 486 (Tex. Crim. App. 1995); Turro v.
State, 867 S.W.2d 43, 46-47 (Tex. Crim. App. 1993). Sufficiency of the
evidence is measured by the hypothetically correct jury charge, which
accurately sets out the law, is authorized by the indictment, and does
not unnecessarily increase the State's burden of proof. Malik v. State,
953 S.W.2d 234, 240 (Tex. Crim. App. 1997); Cano v. State, 3 S.W.3d
99, 105 (Tex. App.--Corpus Christi 1999, pet. ref'd). The jury, as the
sole judge of the credibility of the witnesses and the weight to be given
their testimony, is free to accept or reject all or any part of the testimony
of any witness. Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1981);
Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); Bowden
v. State, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982).

 Appellant was charged with capital murder in connection with the
death of Iris Yvette Hidalgo. The indictment alleges that appellant, on
or about March 23, 1996,

did then and there in the course of attempting to commit
aggravated sexual assault on Iris Yvette Hidalgo, the victim,
did then and there intentionally commit murder by causing
the death of an individual, Iris Yvette Hidalgo, the victim, by
stabbing the victim with a knife . . . [or in the alternative] by
cutting the victim with a sharp object unknown to the Grand
Jurors.


 A person commits murder if he intentionally or knowingly causes
the death of an individual. Tex. Pen. Code Ann. § 19.02(b)(1)(Vernon
1994). A person commits capital murder if he intentionally commits the
murder in the course of committing or attempting to commit aggravated
sexual assault. Tex. Pen. Code Ann. § 19.03(a)(2) (Vernon 1994). A
person commits aggravated sexual assault: 

(1) if the person:

 (A) intentionally or knowingly:

 (i) causes the penetration of the anus or female
sexual organ of another person by any
means, without that person's consent;

 (ii) causes the penetration of the mouth of
another person by the sexual organ of the
actor, without that person's consent; or 

 (iii) causes the sexual organ or another person,
without that person's consent, to contact or
penetrate the mouth, anus, sexual organ of
another person, including the actor; . . . and

(2) if:

 (A) the person:

 (i) causes serious bodily injury or attempts to
cause the death of the victim or another
person in the course of the same criminal
episode;

 (ii) by acts or words places the victim in fear
that death, serious bodily injury, or
kidnapping will be imminently inflicted on
any person;

 (iii) by acts or words occurring in the presence
of the victim threatens to cause the death,
serious bodily injury, or kidnapping of any
person;

 (iv) uses or exhibits a deadly weapon in the
course of the same criminal episode; . . . .


Tex. Pen. Code Ann. § 22.021(a) (Vernon Supp. 2000). 

 Viewing the evidence in the light most favorable to the verdict,
appellant, a City of Edcouch police officer, claimed to have discovered
the body of 18-year-old Iris Hidalgo in a sewer plant holding pond near
La Villa, Texas in the early morning hours of Sunday, March 24, 1996. 
The body was nude except for a shirt and a bra that had been pushed
up over one breast. The victim's panties, shoes and jeans (which had
one leg turned out) were recovered from the pond. There was a large
pool of the victim's blood on the grass near the edge of the pond. The
cause of death was loss of blood from a deep gash in the victim's
throat. There was also a post-mortem wound on the neck, as well as
a pre-mortem, non-fatal round puncture wound on the back of the neck. 
There were ligature marks around the victim's wrists, a round bruise on
her knee suggestive of a bite mark, and bruising around the entrance to
her vagina.

 Appellant initially claimed he had found a folded note on his patrol
car that read: "Go to sewer plant." He called for backup, and Officer
Ricardo De Hoyos answered to assist. Appellant showed De Hoyos the
note, which was not folded. Appellant and De Hoyos then drove to the
sewer plant. At the sewer plant, appellant asked De Hoyos which way
he wanted to proceed. Despite the fact that De Hoyos chose to go left,
appellant also proceeded to the left. A few seconds later, appellant
screamed that there was a body in the water. At the time, appellant
was walking back toward his patrol car. De Hoyos was not able to
ascertain the object in the water was a body until other officers arrived
and they all shined their flashlights on it. Several officers present at the
removal of the body testified to appellant's unusual behavior. Appellant
acted "panicky" and nervous, fell to his knees crying "in agony," and
had dry heaves.

 Appellant later gave a statement to investigators that he had
engaged in consensual "kinky" sexual intercourse with the victim while
she was handcuffed, on the hood of his patrol car. He claimed this
occurred at the sewer plant at approximately 1:00 a.m. on Saturday,
March 23, while he was on duty, and that she had been alive and fully
dressed when he left. He returned to the sewer plant shortly thereafter
and found her body floating in the water. He admitted writing the "Go
to sewer plant" note himself and planting it on his patrol car.

 The victim went to La Villa late on Friday, March 22, hoping to see
a friend. She told various people that an Edcouch police officer had
stopped her twice before, flirted with her, and asked for her phone
number, which she did not give him. She referred to appellant as
"disgusting" and a "perv." The victim's sister testified that the victim
was attracted to young, athletically-built men, and that she despised
overweight people.(2) 

 After searching appellant's home, police found a photograph of the
victim. DNA testing revealed the victim's blood was present on the
dashboard and passenger door armrest of appellant's patrol car, on
bloodstained dry grass found on the passenger side floorboard of
appellant's patrol car, and on a handgun clip recovered from appellant's
home. The probability of the blood on the dashboard and armrest
belonging to any unrelated individual other than the victim was fixed at
one in 363,000,000 for the southeastern United States Hispanic
population.

 Police logs show that appellant's whereabouts on Saturday,
March 23, are unaccounted-for from 12:54 a.m. until 1:59 a.m., except
for a "10-6" call.(3) At 1:59 a.m., appellant arrived at the police station
and was met by his wife, who had brought him a clean pair of jeans at
his request. Appellant told her that he needed the clean jeans because
he had urinated on himself. However, he never gave her the jeans he
was wearing that night.

 In light of this evidence, we hold that a rational trier of fact could
have found appellant murdered the victim in the course of attempting
to commit an aggravated sexual assault on her, and that the evidence
is legally sufficient to support his conviction of capital murder. 
Appellant's fifth issue is overruled.

B. Appellant's Statement


 In his fourth issue, appellant contends that his extrajudicial
confession was not corroborated as required by Texas law.

 No criminal conviction can be based upon a defendant's
extrajudicial confession unless the confession is corroborated by
independent evidence tending to establish the corpus delicti. Fisher v.
State, 851 S.W.2d 298, 302 (Tex. Crim. App. 1993). The primary
purpose of the corpus delicti rule is to assure that no person is
convicted without some independent evidence showing the crime to
which he confessed was actually committed by someone. Gribble v.
State, 808 S.W.2d 65, 71 (Tex. Crim. App. 1990)(plurality op.). The
independent evidence must corroborate a defendant's extrajudicial
confession to capital murder as to both the murder and the underlying
felony. Cardenas v. State, No. 73,107, 2000 Tex. Crim. App. LEXIS 45,
*14 (Tex. Crim. App. April 26, 2000); Chambers v. State, 866 S.W.2d
9, 15 (Tex. Crim. App. 1993). The corroborating evidence need not
conclusively prove the underlying offense; rather, all that is required is
that there be some evidence which renders the commission of the
offense more probable than it would be without the evidence. 
Cardenas, 2000 Tex. Crim. App. LEXIS at *14; Chambers, 866 S.W.2d
at 15-16. Under the corpus delicti rule, our task as an appellate court
is to consider all the record evidence, other than appellant's confession,
in the light most favorable to the jury's verdict to determine whether
that evidence tended to establish the corpus delicti. Mestiza v. State,
923 S.W.2d 720, 726 (Tex. App.--Corpus Christi 1996, no pet.)(citing
Fisher, 851 S.W.2d at 302). 

 Assuming, arguendo, that appellant's statement to investigators
constitutes a "confession," there is plenty of evidence in the record
showing the corpus delicti. The record shows that the victim's body,
nude except for her shirt and bra, was thrown into a sewer plant pond,
along with the rest of her clothing. A large pool of her blood was
nearby; she died as a result of her throat being cut. The autopsy
revealed wrist bruises consistent with the application of handcuffs,
vaginal bruising, other bruising, and other wounds. This evidence tends
to prove that the victim's death was caused by the criminal act of
another during an attempt at or during the course of an aggravated
sexual assault.

 We hold the independent evidence sufficiently corroborates
appellant's statement. Appellant's fourth issue is overruled.

C. Motion to Suppress


 In his first issue, appellant contends the trial court erred in denying
his motion to suppress the statement he gave to the police because it
was taken in violation of his Fifth and Sixth Amendment rights to
counsel. 

 At the hearing on the motion to suppress, Lt. Florentino Garza, an
investigator with the Hidalgo County Sheriff's Office, testified that
Investigator Marc Solis read appellant his rights, and that appellant
indicated he understood those rights by initialing and signing the
warnings. According to Garza, appellant never requested an attorney
nor asked that the interview cease. Garza stated he never told appellant
that he did not need an attorney.

 Appellant testified that he was never told he was in custody. In
fact, he was told he could leave if he wanted. Solis read him his rights. 
Later, before the interview began, appellant asked Garza if he needed
an attorney, and Garza told him he did not. Appellant admitted he
understood his constitutional rights, and that he voluntarily signed a
written waiver of those rights. Appellant testified that he repeatedly
asked for an attorney before and during the giving of the statement, but
he was denied one. Appellant was arrested about two hours after
giving the statement. He was a certified peace officer who studied the
Miranda warnings at the police academy.

 A trial court's ruling on a motion to suppress is generally reviewed
for abuse of discretion. Oles v. State, 993 S.W.2d 103, 106 (Tex. Crim.
App. 1999); Maddox v. State, 682 S.W.2d 653, 564 (Tex. Crim. App.
1985). The trial court is the sole trier of fact and judge of the weight
and credibility of the evidence. State v. Ballard, 987 S.W.2d 889, 891
(Tex. Crim. App. 1999). The reviewing court may not disturb supported
findings of fact absent an abuse of discretion. Id. A review of a trial
court's ruling on a motion to suppress presents an application of law to
a fact question. Maestas v. State, 987 S.W.2d 59, 62 (Tex. Crim. App.
1999). We must afford almost total deference to a trial court's
determination of facts supported by the record and its rulings on
application of law to fact questions, when those fact findings involve an
evaluation of the credibility and demeanor of witnesses. Maestas, 987
S.W.2d at 62; Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App.
1997). However, we review de novo questions of law and mixed
questions of law and fact that do not turn on an evaluation of credibility
and demeanor. Oles, 993 S.W.2d at 106; Maestas, 987 S.W.2d at 62;
Guzman, 955 S.W.2d at 89. 

 The evidence concerning appellant's possible invocation of his
right to counsel was conflicting, requiring the trial court to evaluate the
witnesses' credibility and demeanor. Thus, we must review appellant's
issues regarding suppression of his oral and written statements under
an abuse of discretion standard, and defer to the trial court's findings
as long as they are supported by the record. See Maestas, 987 S.W.2d
at 62.

1. Sixth Amendment Rights


 The Sixth Amendment to the U.S. Constitution provides that "in
all criminal prosecutions, the accused shall enjoy the right . . . to have
the Assistance of Counsel for his defence." U.S. Const. amend. VI. The
purpose of the Sixth Amendment right to counsel is:

to protect the unaided layman after the adverse positions of
government and defendant have solidified with respect to a
particular alleged crime. The right thus attaches at the
initiation of adversarial proceedings, whether by way of
formal charge, preliminary hearing, indictment, information,
or arraignment, and no request for counsel need be made by
the accused. Once the Sixth Amendment right to counsel
attaches, government efforts to elicit information from the
accused, including interrogation, represent "critical stages"
at which the right to counsel applies. 


Cobb v. State, 2000 Tex. Crim. App. LEXIS 32, *9-*10 (Tex. Crim. App.,
March 15, 2000)(citations omitted), cert. granted, 120 S. Ct. 2716 (U.S.
June 26, 2000). A fundamental safeguard provided by the Sixth
Amendment is the "general prohibition of state initiated questioning of
an accused who is represented by counsel during all critical stages of
criminal proceedings once formal adversarial proceedings have begun,
except where counsel is present or is informed of the interrogation." 
State v. Frye, 897 S.W.2d 324, 327 (Tex. Crim. App. 1995). 

 The United States Supreme Court has not established a "bright
line" rule to mark when an adversarial proceeding has begun, and has
instead left this determination to the state courts to answer. United
States v. Gouveia, 467 U.S. 180, 187-89 (1984); Hidalgo v. State, 983
S.W.2d 746, 752 (Tex. Crim. App. 1999). The Court of Criminal Appeals
has also declined to declare such a rule. Hidalgo, 983 S.W.2d at 752;
Frye, 897 S.W.2d at 327-28; Green v. State, 872 S.W.2d 717, 720 (Tex.
Crim. App. 1994). Instead, it has recognized that determining whether
a particular event is a critical stage -- thus triggering a Sixth
Amendment right to counsel -- depends on whether the accused
requires aid in coping with legal problems or assistance in meeting his
adversary. Hidalgo, 983 S.W.2d at 752; Frye, 897 S.W.2d at 327-28;
Green, 872 S.W.2d at 720-22. When an indictment occurs prior to
arraignment or any other legal proceeding, the Sixth Amendment right
to counsel does not attach before indictment. DeBlanc v. State, 799
S.W.2d 701, 706 (Tex. Crim. App. 1990); see also Cobb, 2000 Tex.
Crim. App. LEXIS at *11 ("Once appellant was indicted for the Owings
burglary, his Sixth Amendment right to counsel attached to that offense
. . .")(emphasis added). 

 In the instant case, we conclude that at the time appellant gave
his statement, he was merely a suspect. Further, as a licensed peace
officer, appellant was sufficiently familiar with the process to determine
whether he should have an attorney present during questioning. We
hold the trial court did not err in denying appellant's motion to suppress
because appellant's Sixth Amendment right to counsel was not
violated.

2. Fifth Amendment Rights
 The Fifth Amendment to the U.S. Constitution guarantees that "[n]o
person . . . shall be compelled in any criminal case to be a witness
against himself, nor be deprived of life, liberty, or property, without due
process of law . . ." U.S. Const. amend. V. The importance of this right
is emphasized by its inclusion in the Miranda warnings. See Maestas,
987 S.W.2d at 61. However, invocation of an individual's Fifth
Amendment right to counsel "requires, at a minimum, some statement
that can be reasonably construed to be an expression of a desire for the
assistance of an attorney in dealing with custodial interrogation by the
police." Guidry v. State, 9 S.W.3d 133, 143 (Tex. Crim. App. 1999)
(citing McNeil v. Wisconsin, 501 U.S. 171, 178 (1991) and Green v.
State, 934 S.W.2d 92, 97 (Tex. Crim. App. 1996)). The question of
whether the accused has actually invoked the right to counsel is an
objective inquiry, requiring some statement that can reasonably be
construed as an expression of a desire for an attorney's assistance. 
Davis v. United States, 114 S.Ct. 2350, 2355 (1994). 

 The trial court denied appellant's motion to suppress, impliedly
finding that appellant never informed Garza or any other law
enforcement official that he wished to consult with an attorney, and
that he did not invoke his right to counsel prior to giving his statement. 
Because these findings are supported by the record, we hold the trial
court did not err in denying appellant's motion to suppress. See
Maestas, 987 S.W.2d at 62. Appellant's first issue is overruled.

D. Jury Argument


 In his third issue, appellant contends the trial court erred in
overruling his objection to two statements made by the prosecutor
during closing argument. The prosecutor stated: Nobody ever claimed that these were the blue jeans. We
never said that State's Exhibit 98 were the blue jeans he
wore on the night of the murder. You all were here Friday. 
What happened to those blue jeans? What happened to
them? Mattie Chavero [appellant's wife] took him a clean
pair of jeans at 2:00 a.m. Nobody claimed those were the
jeans. We don't know where those jeans are. She never
touched those jeans. She never washed those jeans. She
never smelled those jeans. Why? Because there was blood
all over them.


Appellant also contends the prosecutor's argument was improper
because the prosecutor, 

in describing a summary of the events as they unfolded,
included a number of sequence of [sic] events which had no
support in the record, including the purported dialogue
between decedent and Appellant, and the events leading to
her sexual assault, indicating that the decedent was kicking
and screaming.


 Defense counsel objected to both statements, contending that the
prosecutor was "arguing outside the record." The trial court overruled
both objections. Appellant now argues that the prosecutor argued facts
outside the record and mislead the jury; thus, the argument was
improper.

 To fall within the realm of proper jury argument, the argument
must encompass one of the following areas: (1) summation of the
evidence presented at trial; (2) reasonable deduction drawn from the
evidence; (3) an answer to the opposing counsel's argument; or (4) a
plea for law enforcement. Gaddis v. State, 763 S.W.2d 396, 398 (Tex.
Crim. App. 1988); Moore v. State, 997 S.W.2d 863, 869 (Tex.
App.--Fort Worth 1999, pet. ref'd.). Counsel is allowed wide latitude
in drawing inferences from the evidence, provided those inferences are
reasonable, fair, legitimate, and offered in good faith. LaGrone v. State,
942 S.W.2d 602, 619 (Tex. Crim. App. 1997). In examining challenges
to jury argument, an appellate court considers the remark in the context
in which it appears. Gaddis, 753 S.W.2d at 398; Denison v. State, 651
S.W.2d 754, 761-62 (Tex. Crim. App. 1983). Furthermore, a prosecutor
may argue his opinions concerning issues in the case so long as the
opinions are based on the evidence in the record and do not constitute
unsworn testimony. McKay v. State, 707 S.W.2d 23, 37 (Tex. Crim.
App. 1985). 

 After reviewing the record, we find the complained-of statements
were made during the State's final closing argument, after appellant's
counsel had completed his argument. During his jury argument,
appellant's counsel asserted that the jeans and uniform shirt introduced
into evidence by the State were the same ones appellant was wearing
at the time the murder occurred, and implied that, because there was
no blood on the clothing introduced into evidence, appellant could not
have cut the victim's throat as charged.

 In the first complained-of statement, the prosecutor responded to
appellant's counsel's assertion by noting that the State had never
claimed the introduced items were worn by the appellant on the night
of the murder. The State had already argued the implausibility of Mrs.
Chavero's testimony that she had taken appellant a pair of clean jeans
because he had urinated on himself by noting that she had taken
appellant clean jeans, but no clean underwear. He then opined the real
reason Mrs. Chavero had not been given the soiled jeans was because
they were bloodstained. In this context, the remarks constituted an
answer to opposing counsel's argument, and an inference from the
evidence presented by Mrs. Chavero's testimony, which we find
permissible. See Gaddis, 763 S.W.2d at 398; McKay, 707 S.W.2d at
37.

 In the second complained-of statement, the prosecutor made
inferences based on the following evidence:

(1) that appellant stopped the victim ostensibly for a traffic
violation, based on the evidence that her car was found on
the side of a road near the sewer plant with her driver's
license on the console and the driver's side window rolled
halfway down;

(2) that appellant handcuffed the victim, based on the evidence
that there was bruising on the victim's wrists consistent
with handcuffs;

(3) that appellant had to struggle to remove the victim's
clothing, based on the evidence that the victim's bra and
shirt were found pushed above her breast, the leg of her
jeans was turned inside-out, and her jeans and panties were
flung into the sewage pond;

(4) that appellant waited until the victim had bled completely
out before he cut her again to see if she was dead, based on
the autopsy findings of a second, post-mortem neck wound;
and

(5) that a big, strong person such as appellant carried her body
to the pond and threw it in, based on the absence of drag
marks at the murder scene.

 We hold this argument permissible as an answer to appellant's
counsel's argument that there was no evidence the murder had
occurred in an attempt at or in the course of an aggravated sexual
assault, and as reasonable inferences from the evidence presented at
trial. See Gaddis, 763 S.W.2d at 398; McKay, 707 S.W.2d at 37. 
Appellant's third issue is overruled.

E. Ineffective Assistance of Counsel


 In his second issue, appellant contends he was denied effective
assistance of counsel during trial "because his trial counsel failed to
effectively present a viable defense in his capital murder case." 
However, he argues only that trial counsel was ineffective because he
did not contest the validity of the two consents appellant gave police to
search his home.

 Claims of ineffective assistance are analyzed under the rule set
forth in Strickland v. Washington, 466 U.S. 668 (1984), and adopted by
the court of criminal appeals in Hernandez v. State, 726 S.W.2d 53, 56
(Tex. Crim. App. 1986). The Strickland test is the benchmark for
judging whether counsel's conduct has so undermined the proper
functioning of the adversarial process that the trial cannot be relied on
as having produced a reliable result. Thompson v. State, 9 S.W.3d 808,
812 (Tex. Crim. App. 1999) (citing McFarland v. State, 845 S.W.2d 824,
843 (Tex. Crim. App. 1992). The appellant must first show his trial
counsel's performance was not reasonably effective, falling below an
objective standard of reasonableness under the prevailing professional
norms. Strickland, 466 U.S. at 694; Thompson, 9 S.W.3d at 812-13. A
showing of deficiency requires a demonstration that trial counsel made
errors so serious that he was not functioning as the counsel guaranteed
a defendant under the Sixth Amendment. Strickland, 466 U.S. at 687. 
We must presume that counsel is better positioned than the appellate
court to judge the pragmatism of the particular case, and that counsel
made all significant decisions in the exercise of reasonable professional
judgment. Young v. State, 991 S.W.2d 835, 837 (Tex. Crim. App.
1999). There is also a strong presumption that trial counsel's conduct
was reasonable and constitutes sound trial strategy. Strickland, 466
U.S. at 689; McFarland, 845 S.W.2d at 843. The "reasonably effective
assistance" standard does not mean errorless counsel. Ex parte Felton,
815 S.W.2d 733, 735 (Tex. Crim. App. 1991); Hernandez v. State, 799
S.W.2d 507, 508 (Tex. App.--Corpus Christi 1991, pet. ref'd). 

 If the appellant can demonstrate deficient assistance under the
first part of the Strickland test, he must then show that there is a
reasonable probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different. Strickland, 466 U.S.
at 694; Thompson, 9 S.W.3d at 812; Washington v. State, 771 S.W.2d
537, 545 (Tex. Crim. App. 1989). "A reasonable probability" means "a
probability sufficient to undermine confidence in the outcome." 
Strickland, 466 U.S. at 694; Thompson, 9 S.W.3d at 812; Ex parte
Walker, 777 S.W.2d 427, 430 (Tex. Crim. App. 1989). The prejudice
element requires a showing that trial counsel's errors were so serious
as to deprive the defendant of a fair trial, one whose result is reliable. 
Strickland, 466 U.S. at 687. The totality of the representation is
evaluated from counsel's perspective at trial, not his isolated acts or
omissions in hindsight. Ex parte Welborn, 785 S.W.2d 391, 393 (Tex.
Crim. App. 1990); Wilkerson v. State, 726 S.W.2d 542, 548 (Tex. Crim.
App. 1986). 

 The assessment of whether a defendant received effective
assistance of counsel must be made according to the facts of each case. 
Ex parte Scott, 581 S.W.2d 181, 182 (Tex. Crim. App. 1979); Stone v.
State, 17 S.W.3d 348, 350 (Tex. App.--Corpus Christi 2000, pet. ref'd).
The appellant must prove his claim of ineffective assistance of counsel
by a preponderance of the evidence. Stafford v. State, 813 S.W.2d 503,
506 (Tex. Crim. App. 1991). Furthermore, he must show ineffective
assistance firmly rooted in the record. Jackson v. State, 877 S.W.2d
768, 771-72 (Tex. Crim. App. 1994). We may not speculate as to the
reasons behind trial counsel's actions nor should we try to second
guess trial counsel's tactical decisions which do not fall below the
objective standard of reasonableness. Young, 991 S.W.2d at 837-38;
Solis v. State, 792 S.W.2d 95, 100 (Tex. Crim. App. 1990); Stone, 17
S.W.3d at 350.

 These demanding standards are virtually impossible to meet when
no proper evidentiary record was developed at a hearing on a motion for
new trial. The court of criminal appeals noted recently that "[a]
substantial risk of failure accompanies an appellant's claim of ineffective
assistance on direct appeal. . . . In a majority of instances, the record
on direct appeal is simply undeveloped and cannot adequately reflect
the failings of trial counsel." Thompson, 9 S.W.3d at 813-14. The
reason an adequate record is so important in these cases is because in
the absence of such a record, the court must apply the strong
presumptions that counsel's performance was a part of trial strategy,
and typically will not second-guess a matter of trial strategy. Young,
991 S.W.2d at 837; Stone, 17 S.W.3d at 350. 

 There was a timely motion for new trial filed in this case. 
However, the motion did not assert ineffective assistance of counsel as
grounds for granting a new trial. In fact, none of the grounds asserted
required an evidentiary hearing, and we find no record that a hearing
was ever held. The motion for new trial was overruled by operation of
law. We are without evidence of what defense counsel's trial strategy
might have been. We cannot "second-guess trial counsel's tactical
decisions which do not fall below the objective standard of
reasonableness." Young, 991 S.W.2d at 837-38; Vasquez v. State, 830
S.W.2d 948, 950-51 (Tex. Crim. App. 1992). All we can do is determine
from the record before us if the complained-of actions "fall below the
objective standard of reasonableness." Id. Where the record before us
affirmatively demonstrates that counsel took some action in defending
his client that no reasonably competent attorney could have believed
constituted sound trial strategy, the defendant has shown he received
ineffective assistance of counsel. Stone, 17 S.W.3d at 353; Campbell
v. State, 2 S.W.3d 729, 734 (Tex. App.--Houston [14th Dist.] 1999, pet.
granted on other grounds)("[I]f silent record clearly indicates no
reasonable attorney could have made such trial decisions, to hold
counsel ineffective is not speculation.").

 Here, the record shows that appellant's trial counsel mounted a
vigorous defense. Not only did he attempt to show that the victim had
a consensual sexual encounter with appellant, he also attempted to
show that the two men the victim was hoping to see in La Villa that
night had both opportunity and motive to murder her. Furthermore,
there is no indication in the record before us that the two consents
given by appellant allowing police to search his home were anything
but voluntarily and knowingly given. Based on the record before us, we
conclude that appellant did not receive ineffective assistance of counsel
during trial. Appellant's second issue is overruled.

 The judgment of the trial court is affirmed.




 FEDERICO G. HINOJOSA

 Justice


Publish. Tex. R. App. P. 47.3.


Opinion delivered and filed this 

the 11th day of January, 2001.

1. Retired Justice Melchor Chavez, assigned to this Court by the Chief Justice of
the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 49.09(f) (Vernon
1998).
2. Photographs of appellant show that he is significantly overweight.
3. To police, "10-6" means "I'm busy."