**Walter ROY a/k/a Eddie Dwayne Moore, Appellant,**

v.

**The STATE of Texas, State.**

No. 2–98–499–CR.

Court of Appeals of Texas, Fort Worth.

July 29, 1999.

Gary L. Medlin, Fort Worth, for Appellant.

Tim Curry, Criminal District Attorney, Clarles M. Mallin, Assistant Criminal District Attorney, Debra Ann Windsor, Assistant Criminal District Attorney, Jason Schuette, Assistant Criminal District Attorney, Fort Worth, for Appellee.

Panel B: LIVINGSTON, BRIGHAM, and HOLMAN, JJ.

## OPINION

DIXON W. HOLMAN, Justice.

A jury convicted and sentenced Appellant Walter Roy, also known as Eddie Dwayne Moore, after finding him guilty of two counts of attempted murder and two counts of engaging in organized criminal activity. Appellant contends that (1) the court should not have denied his motion for a mistrial because the jury heard evidence of his extraneous offenses and unfairly tried him for being a "bad person" rather than for the crimes alleged in his indictment; (2) the jury was allowed to consider inadmissible hearsay evidence about his criminal street gang member-

ship; (3) the jury only heard evidence that is both legally and factually insufficient to support his conviction; (4) the jury heard improper closing argument in the trial's guilt-innocence phase when a prosecutor remarked about Appellant's gang-related tattoos. Finding no reversible error, we affirm the trial court's judgment.

### THE EVENT

Benjamin Robles was at Echo Lake Park, planning to sell nearly three pounds of marijuana to Edric Davis, also known as Troy Walker, when gunfire interrupted their encounter. Appellant had arrived with Edric. Interested bystanders present when the gunfire started included Arturo Rubicon, the marijuana supplier, and Santiago Baez, who came to collect money from Arturo. When the shooting stopped, Edric had been hit in the face by shattered auto glass, Benjamin had been shot in his shoulder, and Paula Lebron had been shot in her toe while diving to the floor of her car to escape the gunfire. None of the others there, which included a two-year-old boy, were shot. Paula and the boy's mother, Stephanie Soto, were passengers in the same car.

Shortly after the shooting, the police arrested Appellant nearby and found the gun in a drainage ditch. The police brought Appellant to the scene of the shooting, where Stephanie identified him as the shooter. The trial was more than two-and-a-half years later. There, Stephanie did not recognize Appellant in person, but did identify him in his photo taken by police on the day of the shooting after his arrest. Paula testified that she did not know who shot her toe. Benjamin and his girlfriend Venecia Saldivar, eyewitnesses to the shooting, both testified that Appellant was the shooter. Edric, Appellant's companion at the park, testified that Appellant did not shoot anyone, and that instead, the shooter was a person known on the streets as "Little Crazy." Edric could not confirm "Little Crazy's" real name or suggest where he might be found.

### DENIAL OF MISTRIAL

Count 4 of the indictment alleges that on the date of the shooting Appellant "did with the intent to establish, maintain or participate as a member of a criminal street gang [commit] aggravated assault of Benjamin Robles by shooting at him with a deadly weapon, to wit: a firearm." Count 5 was substantially the same, except that Paula is the victim named in it. During the guilt-innocence phase of the trial, the prosecution called Fort Worth Police Officer Herman Young as a witness having expert knowledge of street gangs. At the time of trial, he was in his thirteenth year as a Fort Worth police officer and his eighth year as a member of the department's gang unit. He testified without objection about his own training in street gang matters, his undercover narcotics work among gang members, and teaching at seminars in which he has trained thousands of other officers to do police work against street gangs. The officer knows Appellant from their past encounters, identified him in the courtroom, and testified that he had heard Appellant admit being a member of gangs known as the "Five Deuce Hoova Crips" and the "South Side Gangster Criminal Family."

Without objection, the officer explained to the jury that the "South Side Gangster Criminal Family" was started by some members of the Crips:

> [B]ecause gang members were starting to fight over drug territory. The Crips on the South Side Gangster Family decided, why don't we all pool our resources, quit fighting each other, and do our main purpose, which is to sell drugs and to fight the rivals, which are the Bloods.
>
> So you had Four Trey Gangster Crips, Five Deuce Hoova Crips, and 103rd Grape Street Crips, who all unified to become the South Side Gangster Criminal Family.
>
> . . . .
>
> When you look at the gang structure and the gang territory, they have a main

territory, which is their main stronghold as far as the sales and distribution of drugs which is going to be considered the short south side; right in the Evans and Rosedale area, going back up to Berry, Echo Lake, around in those particular areas. It's known as the short south side. It's been divided up into what they call Hoovaland and Aggland, but that is still the Five Deuce Hoova Criminal territory....

....

[The Five Deuce Hoova Crips] involve themselves in offenses from as small as graffiti to petty thefts, to aggravated robberies, to murders, to rapes, to extortions. You name it. They're a criminal enterprise.

....

Crip gang members could call themselves G's as meaning soldiers. Could be BG's, OG's, YG's. And what G stands for is gangster. And you have different status levels that you fall into with the gang. A BG would be a baby gangster, YG would be a young gangster, and OG would be an original gangster, which stands for a gang leader ... a status of what's known as an OG license. And the way you get an OG license ... is you go out and kill a rival gang member and have a gang member witness this. And then you get to put a tear drop on your eye, and the tear drop tattoo gives you the status of an OG license....

At that point, Appellant, who has two tear drops tattooed under one of his eyes, objected that the officer had mentioned an extraneous offense. The trial court's only response was to promptly instruct the jury "don't consider that last statement. That's not part of the evidence."

■ Appellant immediately moved for a mistrial, and his first point on appeal is that the court erred by denying the motion. He argues in his brief that the officer was claiming "that Appellant had previously murdered two people." The State maintains that a mistrial was not required because the court's jury instruction cured any error. *See Kipp v. State,* 876 S.W.2d

330, 339 (Tex.Crim.App.1994); *Kemp v. State,* 846 S.W.2d 289, 308 (Tex.Crim.App. 1992), *cert. denied,* 508 U.S. 918, 113 S.Ct. 2361, 124 L.Ed.2d 268 (1993). Counts 4 and 5 of the indictment allege that Appellant did the shooting while acting as a member of a criminal street gang. We are to allow trial courts considerable leeway in permitting juries to hear, as in this case, "background" contextual evidence that is relevant to a crime charged against the accused, for example, organized criminal activity by acting as a member of a criminal street gang. *See Mayes v. State,* 816 S.W.2d 79, 86–87 (Tex.Crim.App.1991); *Stern v. State,* 922 S.W.2d 282, 287 (Tex. App.—Fort Worth 1996, pet. ref'd). The officer's testimony about OG's was an integral part of his broad and lengthy narration on the background of criminal street gangs in general, not a discussion of Appellant in particular or any acts committed by him. The trial court instructed the jury to disregard officer Young's testimony about OG's and did not abuse its discretion by admitting his other background testimony about the Crips gang as more probative than prejudicial. *See* Tex.R. Evid. 403; *Stern,* 922 S.W.2d at 287. When the court instructed the jury to disregard, the prosecutor changed the subject. The court's instruction was sufficient to cure any error. We overrule Appellant's first point.

### HEARSAY

■ Officer Young testified that Appellant had admitted to him that he is a member of the Five Deuce Hoova Crips gang. Under his second point, Appellant asserts that the trial court erred by overruling his objection that his admission of gang membership to the officer should be excluded as hearsay. Appellant's admission to the policeman was an "admission by a party-opponent" and was not excludable hearsay. *See* Tex.R. Evid. 801(e)(2)(A). A statement is not hearsay if it is offered against a party and is the party's own statement. *Trevino v. State,* 991 S.W.2d 849, 852–53 (Tex.Crim.App.—1999).

Appellant was indicted and convicted of attempted murder. And he was indicted and convicted for the separate offense of engaging in organized criminal activity during the shooting that occurred at an intended drug sale. Appellant's brief expands the argument under his second point about hearsay to contend that testimony about the extraneous criminal activity of gangs he belonged to, including drug activity and drug sales, was irrelevant and designed to violate the rules of evidence by demonstrating only that he has bad character, a "criminal type." *See* TEX.R. EVID. 403, 404. He suggests that persons who join gangs such as the ones described in the police officer's testimony "are no different in personality or social background from youths who do not join gangs," a premise the record does not equip us to explore.

■ Without question, a person should not be tried for simply being a person of criminal character. *See Abdnor v. State,* 871 S.W.2d 726, 738 (Tex.Crim. App.1994); *Stern,* 922 S.W.2d at 286. Evidence is not admissible at the guilt-innocence phase of a trial to show that, with regard to the charged offense, the defendant's conduct conformed to his criminal nature. *See Abdnor,* 871 S.W.2d at 738. However, otherwise excludable character evidence may be admissible if material and relevant to show a motive for committing the charged offense. *See* TEX.R. EVID. 404(b); *Stern,* 922 S.W.2d at 286–87. The determination of relevance is for the trial judge, and the appellate court is not to substitute its own perception of relevance when, as here, there is a zone of reasonable disagreement. *See* TEX.R. EVID. 401; *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App.1990) (op. on reh'g). Even if evidence of motive, which prosecutors are always entitled to offer, involves an accused's extraneous act of misconduct, it is nevertheless admissible if its relevancy value outweighs its potential for undue prejudice. *See* TEX.R. EVID. 403; *Gosch v. State,* 829 S.W.2d 775, 783 (Tex.Crim.App. 1991), *cert. denied,* 509 U.S. 922, 113 S.Ct. 3035, 125 L.Ed.2d 722 (1993).

■ Appellant notes accurately that this court does not and should not condone prosecutors' tactics of evading the constraints of Rules 403 and 404 by gratuitously introducing references to gangs and alleged gang activity not connected to the defendant. *See Hullaby v. State,* 911 S.W.2d 921, 931 (Tex.App.—Fort Worth 1995, pet. ref'd). Because *Hullaby* did not involve a charge of engaging in organized criminal street gang activity, an offense charged against Appellant, *Hullaby* is inapposite here. The indictment in this case made it necessary for the State to prove that Appellant intended to participate in the shooting as a member of a criminal street gang. *See* TEX. PENAL CODE ANN. §§ 71.01(d), 71.02(a)(1) (Vernon Supp. 1999). To do that, the State was entitled to introduce evidence that Appellant was a member of the Crips gang, a group of people regularly engaged in criminal activities such as the illegal sale and distribution of drugs and illegal uses of firearms. We overrule Appellant's second point.

## SUFFICIENCY OF EVIDENCE

■ Appellant's third point challenges both the legal and factual sufficiency of the evidence. In reviewing the legal sufficiency of the evidence to support a conviction, we view the evidence in the light most favorable to the verdict. *See Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex.Crim.App. 1992), *cert. denied,* 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See McDuff v. State,* 939 S.W.2d 607, 614 (Tex. Crim.App.), *cert. denied,* —— U.S. ——, 118 S.Ct. 125, 139 L.Ed.2d 75 (1997). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

The legal sufficiency of the evidence is a question of law. The issue on appeal is not whether we as a court believe the State's evidence or believe that the defense's evidence outweighs the State's evidence. *See Matson v. State*, 819 S.W.2d 839, 846 (Tex.Crim.App.1991); *Wicker v. State*, 667 S.W.2d 137, 143 (Tex.Crim. App.), *cert. denied*, 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984). Our duty is not to reweigh the evidence from reading a cold record but to act as a due process safeguard ensuring only the rationality of the factfinder. *See Williams v. State*, 937 S.W.2d 479, 483 (Tex.Crim.App.1996). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *See Matson*, 819 S.W.2d at 846.

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view "all evidence without the prism of 'in the light most favorable to the prosecution.'" *See Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996) (citing *Stone v. State*, 823 S.W.2d 375, 381 (Tex.App.— Austin 1992, pet. ref'd, untimely filed)). We may only set aside the verdict if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See id.* In performing this review, we are to give "appropriate deference" to the fact finder. *Id.* at 136. We may not reverse the fact finder's decision simply because we may disagree with the result. *See Cain v. State*, 958 S.W.2d 404, 407 (Tex.Crim.App.1997). Instead, we may find the evidence factually insufficient only where necessary to prevent manifest injustice. *See id.*

The jury heard undisputed evidence that on the date in question someone shot at the victims in Echo Lake Park with an SKS rifle, a deadly weapon. The evidence proved that Paula was shot in her toe and Benjamin was shot in his shoulder. At the scene, the police watched Stephanie identify Appellant as the shooter. At trial, she identified him in a photo the police made on the day of the shooting. Both Benjamin and Venecia identified Appellant as the shooter. The jury was entitled either to believe these witnesses or instead to believe Edric's testimony that "Little Crazy" was the shooter. It seems clear that the jury did not believe Edric. Officer Young's testimony established that the Crips gang meets the statutory definition of a criminal street gang, *see* TEX. PENAL CODE ANN. § 71.01(d), and that he heard Appellant admit being a member of the Five Deuce Hoova Crips gang. Edric testified that he too is a member of the Crips gang. Officer Young identified the tattoo symbols commonly used by Crips members as matching the tattoos on Appellant, testified that Echo Lake Park is in the territory claimed by the Five Deuce Hoova Crips gang, and testified that common activities of the gang include illegal drug transactions and robbing other participants in those transactions. Officer Young told jurors that the SKS rifle is a preferred weapon of the Crips gang and that the photo of Appellant taken on the day of the shooting showed Appellant "clued up," that is, wearing apparel that would signal his gang affiliation to persons who recognize such things. The officer testified that gang members get "clued up" when on missions for their gang.

Accordingly, the jury heard legally and factually sufficient evidence to prove beyond a reasonable doubt that Appellant shot Benjamin and Paula with a firearm that is a deadly weapon, that he is a member of the Crips, a criminal street gang, and that when he shot them, Appellant was acting with the intent to participate in organized criminal activity as a member of that gang. *See, e.g., Stern*, 922 S.W.2d at 287. The jury's verdict is not irrational, not unsupported by proof beyond a reasonable doubt, and not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. We overrule Appellant's third point.

## THE STATE'S CLOSING ARGUMENT

■■■ Appellant's fourth point is that in closing argument during the guilt-innocence phase, a prosecutor violated the trial

court's earlier instruction that the jury may "not consider the police officer's testimony that the tattoos indicated that Appellant had previously murdered two people." At the trial, Appellant objected to what he considered the offending portion of the closing argument by saying, "[o]bjection, outside the record. Outside the record. There's no testimony." The court overruled the objection, and the State now argues that the objection was untimely, therefore not preserved. We believe the objection was timely and did preserve the fourth point for our consideration.

But we recognize that in closing the prosecutor neither said nor implied that Appellant had previously murdered two people, and we have already determined that officer Young did not testify that Appellant had previously murdered two people. Indeed, Appellant's trial objection of "outside the record" acknowledges the absence of such testimony, although his fourth point on appeal attacks "the officer's testimony that the tattoos indicated that Appellant had previously murdered two people." Because the prosecutor's objected-to remarks did not mention officer Young or his testimony, it is helpful to examine the remarks in their context:

> And what [Edric] wants you to believe is not that they're trying to steal some dope, is (sic) that there's a lone Crip out there who's just shooting . . . a lone Crip that walks down the street . . . with this gun, and he's going to Echo Lake Park in the mid afternoon . . . . maybe he doesn't like dope dealers, he's going to start wielding off at them?
>     . . . .
> The lone Crip . . . does that make any sense . . . does that fit? Is that reason and common sense? You bet it's not. . . . Edric . . . [w]e know the type of person [he is]. . . . See, he can't still—he still can't deny that he's a Crip. Just like [Appellant] will tattoo it on his neck, tattoo it across his chest, will put tattoos of tear drops on his face and his forearm. They love this. . . . This is for life.

> And if you don't believe that one Crip can come in here—

There, the prosecutor was stopped by Appellant's objection on the ground that the argument is outside the record. The objection was overruled, and the prosecutor's context continued:

> [Edric] can't even make up a good story . . . "no, I got to make up another story, because [Appellant's] my boy, too. So my motivation to lie here is high. I love [Appellant]. I got more than even just Crip allegiance to him. I call him my cuzz." He said, "I love him like a brother." You can take that into consideration.

> Organized crime. You bet. . . .

After considering the argument in context, we conclude that the trial court did not err by overruling the objection. Counsel is allowed wide latitude in drawing inferences from the evidence, provided those inferences are reasonable, fair, legitimate, and offered in good faith. *See Lagrone v. State,* 942 S.W.2d 602, 619 (Tex. Crim.App.), *cert. denied,* —— U.S. ——, 118 S.Ct. 305, 139 L.Ed.2d 235 (1997); *Gaddis v. State,* 753 S.W.2d 396, 398 (Tex. Crim.App.1988); *Cannon v. State,* 668 S.W.2d 401, 401 (Tex.Crim.App.1984). Here, it is plain that the prosecutor was arguing her deduction from the evidence that Edric had not been a truthful witness because the comradeship shared by fellow Crips had motivated Edric to lie for Appellant by testifying that "Little Crazy," not Appellant, was the shooter. We overrule Appellant's fourth point.

### CONCLUSION

We have overruled each of Appellant's four points on appeal after carefully considering each one. We affirm the trial court's judgment.