

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00193-CR

GERALD DESMOND GRIFFIN                                             APPELLANT

V.

THE STATE OF TEXAS                                                  STATE

----------

### FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY
### TRIAL COURT NO. 1360873D

----------

## MEMORANDUM OPINION[1]

----------

Appellant Gerald Desmond Griffin appeals his convictions and sentences for aggravated robbery and engaging in organized crime. We affirm.

## Background Facts

On the evening of October 6, 2012, Marcus Brooks drove Naomi Cilumba to her friend's apartment after having dinner together. They were sitting in

---

[1]See Tex. R. App. P. 47.4.

Brooks's car talking when they noticed someone circling the car trying to see in. The person then opened the driver's side door and held a gun to Brooks's head. The person wore a dark-colored bandana around his face and an orange hoodie. Brooks saw another person standing behind the car also wearing an orange hoodie. He also noticed an "older-model vehicle" behind him.

The man with the gun tried to open the back door of the car, at which point Brooks was able to grab the gun from him. Brooks testified that he grabbed for the gun because "that was [his] . . . only time to make [his] move, to make it through the night." Both attackers ran off, and Brooks shot at one of them "four to five times." Brooks and Cilumba drove away, and Brooks called the police.

Fort Worth police arrived at the apartment complex where the shooting had occurred and found Keandrick Reed lying in the parking lot. Reed had been shot, and people were tending to his wounds. Police found a bloody bandana "that had been tied to be fashioned around your face," bullet casings, and a cell phone. Police later found a hoodie that matched the description that witnesses had given of the suspects. Both the bandana and hoodie were bloody and had bullet holes.

Reed confessed to the attempted robbery and named Demarrio Handy as the person who had the gun that night. He also stated that Appellant had picked them up and had taken them to the location of the incident. Reed testified that they had planned to commit robbery and split the money among the three of them.

2

Reed testified that he, Handy, and Appellant were members of a street gang called the Untamed Gorillas or 7 Tre. Appellant was an "OG," short for "Original Gangster," a high-ranking member of the gang. Reed said that as a lower-ranking member of the gang, he would have to follow orders that an OG gave.

Appellant was charged with aggravated robbery and engaging in organized crime. *See* Tex. Penal Code Ann. §§ 29.03(a)(1), (2) (West 2011), §§ 31.03, 71.02 (West Supp. 2014). A jury found Appellant guilty of both charges, found the two habitual offender enhancement paragraphs true, and assessed punishment at seventy-five years' confinement for each. The trial court sentenced Appellant accordingly with the two seventy-five year sentences to run concurrently. Appellant then filed this appeal.

**Discussion**

**1. Law of parties**

In his first issue, Appellant challenges the sufficiency of the evidence supporting the jury's finding that he is liable for the aggravated robbery under the law of parties. In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). This standard gives full play to the

3

responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dobbs*, 434 S.W.3d at 170.

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Dobbs*, 434 S.W.3d at 170. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Dobbs*, 434 S.W.3d at 170.

Even if a person does not personally commit the offense, a court may find him guilty as a party if, "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." Tex. Penal Code Ann. § 7.02(a)(2) (West 2011). To determine whether an individual is a party to an offense, the reviewing court may look to events before, during, and after the commission of the offense. *Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012). There must be

4

sufficient evidence of an understanding and common design to commit the offense. *Id.* Evidence may be direct or circumstantial. *See id.* Each fact need not point directly to the guilt of the defendant as long as the cumulative effect of the facts is sufficient to support the conviction under the law of parties. *Id.*

Reed testified that he had known Appellant for two years, and they had been introduced by Handy. Reed said he, Handy, and Appellant were all members of the same gang. A police officer also testified that Appellant, Reed, and Handy were documented gang members of the Untamed Gorillas.

Reed testified that Appellant was an OG in the gang and that Reed had to follow orders that an OG gave. Reed said that Handy owned two guns, one of which had been given to him by Appellant. The night of the robbery, Appellant called Reed and told him, "I'm on the way." Reed said that Appellant did not tell him what he wanted to do but that Reed knew what they were going to do. Reed said they planned on robbing someone for money. The plan would be to split the money amongst the three of them. Reed said that Appellant dropped him and Handy off at the apartment complex and that Appellant would be their ride back to Arlington, where they lived.

Reed's cellphone had Appellant's phone number saved under his name and nickname. A police officer testified that the same number was sent out on Twitter from Appellant's account. Reed's call history pulled from his phone showed seven incoming and outgoing calls between Reed and Appellant on the night of the robbery starting at 11:52 p.m. until 12:36 a.m., about thirty minutes

before the robbery. There were no other calls made or received during that time. Three incoming calls came in after 1:00 a.m., but Reed did not answer them.

Brooks testified that he saw an "older-model vehicle" behind him after the robbery had occurred. Reed testified that Appellant drove an "older model" car and had been driving that car the night of the robbery. A police officer testified that Reed and Handy did not own cars and that they could not have walked to the apartments from their homes that night. The officer believed that Appellant had driven Reed and Handy to the apartments. He also stated that Appellant, Reed, and Handy were all suspects in "other related cases in Arlington related to the same factors." Appellant's Twitter account also showed that he had gone to Louisiana in late October 2012.

The evidence shows that Appellant and Reed communicated frequently in the hour before the robbery. Because of Appellant's status in the gang, he had the authority to give orders to Reed and Handy. The jury could believe that Appellant drove Reed and Handy to the apartments with the intent to commit robbery and split the proceeds. *See Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994), *cert. denied*, 519 U.S. 1030 (1996) ("In determining whether the accused participated as a party, the court may look to events occurring before, during[,] and after the commission of the offense, and may rely on actions of the defendant which show an understanding and common design to do the prohibited act."). The jury could also believe that after the robbery attempt failed and Reed was arrested, Appellant fled to Louisiana to escape prosecution.

6

*See id.* at 299 (reasoning that acts designed to reduce the likelihood of prosecution, conviction, or incarceration for the offense on trial demonstrate a consciousness of guilt). Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Appellant, with intent to promote or assist the aggravated robbery, solicited, encouraged, directed, aided, or attempted to aid Reed and Handy to commit the aggravated robbery. *See* Tex. Penal Code Ann. § 7.02(a)(2); *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. We overrule Appellant's first issue.

**2. Street gang membership**

In his second issue, Appellant argues that even if the evidence is sufficient to show that he is culpable for the robbery, the evidence is still insufficient to support the jury's finding that he committed the robbery to establish, maintain, or participate as a member of a criminal street gang. *See* Tex. Pen. Code Ann. § 71.02(a)(1).

Appellant acknowledged that he is a member of the Untamed Gorillas, a documented criminal street gang. Although there was evidence that Reed and Handy belonged to other gangs, the evidence also showed that they were both members of the Untamed Gorillas. The State's gang expert testified that it was "pretty common" for someone to be a member of more than one gang at the same time. The only gang with which Appellant was affiliated was the Untamed Gorillas. The evidence showed that Appellant's status in the gang allowed him to

give orders to Reed and Handy.  When asked why he went with Appellant on the night of the robbery, Reed said, "Because I had no choice."

The jury could have reasonably believed that Appellant was able to order Reed and Handy to rob someone and split the proceeds without Appellant assuming the risk of being present during the robbery because he was a leader of their gang.  Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have determined beyond a reasonable doubt that Appellant participated in the aggravated robbery with the intent to participate as a member of the criminal street gang, the Untamed Gorillas.  *See* Tex. Penal Code Ann. § 71.02(a); *Roy v. State*, 997 S.W.2d 863, 869 (Tex. App.—Fort Worth 1999, pet. ref'd).  We overrule Appellant's second issue.

## Conclusion

Having overruled Appellant's two issues, we affirm the trial court's judgments.

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  DAUPHINOT, GABRIEL, and SUDDERTH, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  June 18, 2015

8