

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-18-00474-CR

———————————————

ROSALINO CASTRO, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from Criminal District Court No. 1
Tarrant County, Texas
Trial Court No. 1554677R

---

Dissenting and Concurring Memorandum Opinion by Chief Justice Sudderth

**DISSENTING AND CONCURRING MEMORANDUM OPINION**

I write separately to respectfully dissent from the majority's resolution of Castro's second point because the evidence is insufficient to establish that Castro stole the truck as part of his membership in the East Side Latin Kings. Because I would sustain Castro's second point and hold that the evidence is insufficient to support the conviction for engaging in organized criminal activity (EOCA), I would reverse the trial court's EOCA conviction and render a judgment of acquittal on the charge of EOCA. *See* Tex. R. App. P. 43.2(c), 51.2(d); *Greene v. Massey*, 437 U.S. 19, 24–25, 98 S. Ct. 2151, 2154–55 (1978); *Burks v. United States*, 437 U.S. 1, 16–18, 98 S. Ct. 2141, 2150–51 (1978); *Winfrey v. State*, 393 S.W.3d 763, 774 (Tex. Crim. App. 2013).

An EOCA conviction requires evidence of a "nexus or relationship between the commission of the underlying offense and the defendant's gang membership." *Zuniga v. State*, 551 S.W.3d 729, 739 (Tex. Crim. App. 2018). And although evidence establishing the required nexus between gang membership and the underlying offense is often circumstantial, the evidence must rise to more than mere speculation. *See, e.g.*, *id.*; *Villa v. State*, 514 S.W.3d 227, 228 (Tex. Crim. App. 2017). Reaching a guilty verdict here required speculation.

In the cases cited by the majority, and in many of the cases addressing this issue, the nexus between the commission of the offense and the gang membership is established by the involvement or presence of other gang members at the scene of the

2

crime or by an overt reference to gang affiliation at or near the time the offense was committed. No such evidence appears in this record.

For example, in *Zuniga*, testimony established that Barrio Azteca gang member Zuniga, with the help of other Azteca members, engaged in a fight against two members of a rival street gang outside a bar known as an Azteca "hang-out" and located within the Azteca's self-proclaimed "turf" for high-level drug trafficking. 551 S.W.3d at 737–38. During the fight, two men were murdered by the Aztecas. *Id.* Circumstantial evidence established two possible motives for the murders—an officer testified that the decedents' gang would have been required to pay fees to the Aztecas for "the privilege of doing business" in the area, and he testified that it would be consistent for Azteca members to assault rival gang members who encroached upon their territory or failed to pay a fee. *Id.* at 738. Relying upon these facts, the court of criminal appeals held that the jury could have reasonably drawn an inference that the "coordinated assault" was gang-related activity and connected to the defendant's "role, capacity, or function" as a member of the Aztecas. *Id.*

The *Villa* case also involved the Barrio Azteca gang. 514 S.W.3d at 228. In it, a former member of the Aztecas was beaten by several other Aztecas after the former member participated in a documentary series about street gangs. *Id.* Presumably as a result of the interview, the gang placed a "green light" or "hit" on the complainant, meaning that "gang members who saw him would do what they could to hurt him, including killing him on sight." *Id.* At trial, the complainant testified that several of

3

the people who attacked him were members of the Azteca gang but did not so identify Villa. *Id.* The court of criminal appeals rejected Villa's argument on appeal that the evidence was insufficient to support the conviction for EOCA because the complainant did not specifically identify Villa as an Azteca. In reaching its conclusion, the court pointed to other evidence of Villa's gang affiliation and the gang-related motivation for the attack, all of which added "further support for the jury's conclusion that [Villa] was a gang member." *Id.* at 233.[1]

Last, the majority cites the *Hunsaker* case from our court. *Hunsaker v. State*, No. 02-16-331-CR, 2017 WL 4053897 (Tex. App.—Fort Worth Sept. 14, 2017, pet. ref'd) (per curiam) (mem. op., not designated for publication). In that case Hunsaker, a member of the Aryan Brotherhood of Texas (ABT), attended a house party with other ABT members. *Id.* at *1. During the party, after one ABT member grew "[e]nraged" that a member of the Aryan Circle (a different Aryan gang) was also at the party, the partygoers were instructed to hand over their cell phones. *Id.* After Hunsaker and the others complied, another ABT member announced, "Shit's about to get done ABT style." *Id.* Hunsaker and other ABT members then took the victim into the garage, where the victim was beaten and killed. *Id.* Hunsaker was acquitted

---

[1]The *Villa* case is the only one cited and discussed by the State addressing this point. In its brief, the State appears to argue that the court of criminal appeals held in *Villa* that it need only establish a defendant's gang membership in order to connect that membership to the underlying crime. But this is not so. Rather, the court noted that "the jury had evidence that the attack . . . was a gang-motivated crime" before it addressed Villa's issue on appeal, which was limited to an attack on the sufficiency of evidence establishing his membership in the gang. *Id.* at 230, 233.

of murder but convicted of EOCA. *Id.* at \*2. This court upheld the conviction and overruled his complaint on appeal that Hunsaker's presence alone during the beating and murder was insufficient to support the conviction for EOCA. *Id.* at \*3.

These and other cases demonstrate that evidence of direct involvement by other gang members is a common thread in upholding the sufficiency of the evidence to support an EOCA conviction. *Zuniga*, 551 S.W.3d at 737–38 (holding evidence sufficient where group of Barrio Aztecas murdered two people); *Villa*, 514 S.W.3d at 228 (holding evidence sufficient where group of Barrio Aztecas assaulted former member); *Hunsaker*, 2017 WL 4053897 at \*1–2 (holding evidence sufficient where group of ABT members murdered man); *see also Byrd v. State*, No. 2-08-124-CR, 2009 WL 672390, at \*3–4 (Tex. App.—Fort Worth Mar. 12, 2009, pet. ref'd, untimely filed) (mem. op., not designated for publication) (holding evidence sufficient where defendant and fellow white-supremacist gang members assaulted man); *Harris v. State*, 2-01-348-CR, 2003 WL 2006578, at \*2–3 (Tex. App.—Fort Worth May 1, 2003, pet. ref'd) (mem. op., not designated for publication) (holding evidence sufficient where it showed drive-by shooting occurred in an area of town known to be controlled by the Crips and defendant was detained in a vehicle matching the victim's description and accompanied by another Crips member); *Roy v. State*, 997 S.W.2d 863, 868 (Tex. App.—Fort Worth 1999, pet. ref'd) (holding evidence sufficient where, in drug-deal-gone-bad, defendant—accompanied by a fellow member of the Crips—shot two people). While I would not go so far as to suggest that involvement of other gang

5

members at the scene of the crime is always required, in cases where other gang members are not directly involved, there must be some other competent evidence tending to prove that the defendant committed the crime on behalf of the street gang. *See, e.g.*, *Samaripas v. State*, 446 S.W.3d 1, 6–7 (Tex. App.—Corpus Christi-Edinburg 2013) (holding evidence sufficient to support EOCA conviction where there was evidence that appellant acted in retaliation for rival gang's shooting him in previous altercation), *reversed on other grounds*, 454 S.W.3d 1 (Tex. Crim. App. 2014); *Curiel v. State*, 243 S.W.3d 10, 16–18 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (holding evidence sufficient to support EOCA conviction where defendant, a member of the "La Primera" gang, admitted that he "was acting as a soldier" for Primera and stated, "Here, only Primera," just prior to shooting at the complainant). Without such proof, there is an insufficient nexus between the gang affiliation and the underlying offense.

Here, there was no evidence of the involvement of other East Side Latin Kings in the underlying crime of unauthorized use of a motor vehicle. Officer Wells merely assumed that Castro stole the truck and the construction materials and that he must have had help in loading the construction materials into the truck. This, plus testimony that the East Side Latin Kings are known to steal things and that Castro was found with the truck at a business under investigation for connections to illegal activities of the East Side Latin Kings, is the entirety of evidence admitted to establish that Castro was operating the truck "as a member of a criminal street gang." *See* Tex. Penal Code Ann. § 71.02; *Zuniga*, 551 S.W.3d at 739.

6

This is an example of impermissible speculation described in *Hooper v. State*, 214 S.W.3d 9, 15, 17 (Tex. Crim. App. 2007). A jury cannot determine ultimate facts by relying on speculation, and to demonstrate that point, the court provided its "smoking gun" hypothetical:

> A woman is seen standing in an office holding a smoking gun. There is a body with a gunshot wound on the floor near her. Based on these two facts, it is reasonable to infer that the woman shot the gun (she is holding the gun, and it is still smoking). Is it also reasonable to infer that she shot the person on the floor? To make that determination, other factors must be taken into consideration. If she is the only person in the room with a smoking gun, then it is reasonable to infer that she shot the person on the floor. But, if there are other people with smoking guns in the room, absent other evidence of her guilt, it is not reasonable to infer that she was the shooter. No rational juror should find beyond a reasonable doubt that she was the shooter, rather than any of the other people with smoking guns. To do so would require impermissible speculation. But, what if there is also evidence that the other guns in the room are toy guns and cannot shoot bullets? Then, it would be reasonable to infer that no one with a toy gun was the shooter. It would also be reasonable to infer that the woman holding the smoking gun was the shooter. This would require multiple inferences based upon the same set of facts, but they are reasonable inferences when looking at the evidence. We first have to infer that she shot the gun. This is a reasonable inference because she is holding the gun, and it is still smoking. Next, we have to infer that she shot the person on the floor. This inference is based in part on the original inference that she shot the gun, but is also a reasonable inference drawn from the circumstances.

*Id.* at 15-17. The court later clarified the difference between reasonable inferences and mere speculation, stating that a speculation-driven conclusion cannot support a finding beyond a reasonable doubt. *Winfrey*, 393 S.W.3d at 771; *see also McKay v. State*, 474 S.W.3d 266, 270 (Tex. Crim. App. 2015) (explaining that evidence is insufficient if it "creates only a suspicion that a fact exists"); *Anderson v. State*, 416 S.W.3d 884, 888

7

(Tex. Crim. App. 2013) ("Speculation is mere theorizing or guessing about the possible meaning of the facts and evidence presented.").

The evidence in this case provides no more than a theory that Castro was acting on behalf of the gang or in furtherance of their illegal activities when he was found driving Toole's stolen truck containing stolen construction materials. To support this theory, the State offered: (1) evidence of Castro moving the truck from a business that was suspected of having connections to illegal East Side Latin King activities, including the sale of stolen construction materials; (2) an inference that Castro stole the truck; (3) an inference that Castro would have required the assistance of others to steal the truck and the construction materials; and (4) speculation that out of the entire universe of possible helpers, Castro's helpers must have been fellow members of the East Side Latin Kings. This is the kind of impermissible leap that the court of criminal appeals has held to be infirm. *See Winfrey*, 393 S.W.3d at 771; *Hooper*, 214 S.W.3d at 15–17.

For these reasons, I respectfully dissent from the majority's resolution of Castro's second point. Because I would reverse the trial court's judgment on the EOCA charge and render a judgment of acquittal, I would not address his first point, nor would I address his third point as it relates to the EOCA conviction. *See* Tex. R. App. P. 47.1. I concur with the majority's resolution of Castro's third point with respect to his conviction for unauthorized use of a motor vehicle.

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  January 9, 2020