In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-18-00381-CR
_____

HOSE LENARD SINGLETON, Appellant

V.

THE STATE OF TEXAS, Appellee

**On Appeal from the 221st District Court**
**Montgomery County, Texas**
**Trial Cause No. 18-01-01010-CR**

**MEMORANDUM OPINION**

A jury found Hose Lenard Singleton guilty of engaging in organized criminal activity and assessed his punishment at 38 years in prison.[1] In three appellate issues, Singleton challenges his conviction and argues (1) the evidence is insufficient to support the jury's finding of guilt, (2) the trial court erred by failing, in open court,

---

[1] Tex. Penal Code Ann. § 71.02.

1

to conduct the proceedings required to answer questions the jury asked while deliberating on its verdict, and (3) the trial court erred by allowing the jury to consider testimony that described several of Singleton's prior arrests. We conclude that Singleton either failed to preserve his issues for our review or that they lack merit. For the reasons explained below, we affirm the trial court's judgment.

Background

In April 2018, a grand jury indicted Singleton for engaging in organized criminal activity.[2] The indictment alleges that, on or about January 23, 2018, Singleton, as a member of a criminal street gang, appropriated between $2,500 and $30,000 in cash from the Houston Police Department. The indictment contains two paragraphs, which the State included to enhance the punishment range that applied to Singleton's sentence. These paragraphs allege Singleton had previously been convicted of committing two felony offenses, one in 2004 and the other in 2015.

Singleton's indictment resulted from an undercover investigation of "bank jugging," a crime that involves a suspect following the customer of a bank and when an opportunity arises, taking the customer's money. The investigation in Singleton's case focused on a bank in north Houston. The Houston Police Department opened

---

[2] *See id.*

the investigation after the bank and its customers began complaining about customers of the bank being robbed after leaving the bank.

During the investigation, a plainclothes officer, employed by the Houston Police Department, went to the bank with a bank money bag in her hand. When the officer returned to her SUV, she attached the money bag, which had money inside, to a steel cable. The other end of the cable was attached to the SUV's backseat. As the officer drove away, she noticed another SUV following her, an SUV she had noticed earlier at the bank.

The officer drove to a location that she knew other police officers had under surveillance. In view of the other officers, the plainclothes officer parked and locked her SUV, leaving the money bag on the backseat. When the officer went into a nearby store, the SUV that had followed the officer into the parking lot pulled up to the officer's SUV. A surveillance video recording, admitted into evidence, shows a man getting out of the rear passenger seat in the SUV, after parking next to the officer's SUV. After the man breaks the passenger window on the officer's SUV, he reaches in and tries to take the money bag. But the cable prevented the man from retrieving the money bag from inside the officer's SUV. After a short chase, several officers involved in the surveillance operation stopped the SUV as it drove away

3

from the parking lot. After stopping the SUV, the police discovered two men inside: Charles Price, the driver, and Singleton, the passenger in the backseat.

Several police officers testified in Singleton's trial. One explained that he has experience working on cases for the Houston Police Department that involve investigating gang-related crimes. According to the officer, who participated in the investigation that led to Singleton's arrest, Singleton "is a member of a criminal street gang named *Hustle Under Pressure*[,]" and he is also affiliated with a gang named *5400 Rand Street Soldiers*. The officer also testified that, on previous occasions, police had arrested Singleton with other members of *Hustling Under Pressure* and *5400 Rand Street Soldiers* gangs. According to the officer, street gangs engage in the crime of "bank jugging" because it allows members involved in the thefts to conceal their involvement from the police. We note during his trial, Singleton never disputed the State's claim that he is the person seen in the surveillance video breaking into the plainclothes officer's SUV. Instead, in final argument, Singleton's attorney argued that "[y]ou did not hear any evidence that anything [Singleton did] benefited any gang."

By its verdict, the jury rejected Singleton's argument claiming that he did not break into the plainclothes officer's SUV to take the money bag while a member of

a criminal street gang. After finding Singleton guilty of engaging in organized criminal activity, the jury found Singleton should serve a thirty-eight-year sentence.[3]

## Sufficiency of the Evidence

In issue one, Singleton argues the evidence is insufficient to support the jury's finding that he engaged in organized criminal activity. According to Singleton, the evidence does not support the jury's conclusions that *Hustling Under Pressure* and *5400 Rand Street Soldiers* are criminal street gangs or that he committed the theft while a member of one of those gangs.

A person commits the offense of engaging in organized criminal activity if, "as a member of a criminal street gang, the person commits or conspires to commit" one or more of the enumerated list of offenses, a list that includes theft.[4] Under the Penal Code, the term *criminal street gang* is defined as "three or more persons having a common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in the commission of criminal activities."[5]

When evaluating a defendant's claim that the evidence is insufficient to support his conviction, we review all the evidence admitted in the trial in the light

---

[3] Based on the evidence showing that Singleton had committed two prior felonies, the trial court instructed the jury to consider punishing him in the range of at least twenty-five to ninety-nine years or life.

[4] *Id*. § 71.02(a)(1) (listing theft as one of the enumerated offenses).

[5] *Id*. § 71.01(d).

that favors the jury's verdict.[6] Reviewing the evidence in that light, we then decide whether the evidence allowed the jury to find the defendant committed the elements of the crime at issue based on a standard of beyond a reasonable doubt.[7] The jury is the ultimate authority on the credibility of witnesses and the weight to be given to their testimony.[8] A reviewing court must give full deference to the jury's responsibility to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.[9] When a record contains conflicting inferences, we must presume that the jury resolved the facts in a manner that favors its verdict and defer to that resolution.[10] In our review, we examine the combined and cumulative force of all the evidence to decide whether the inferences the jury made are reasonable.[11]

While a jury cannot arrive at its verdict based on "mere speculation or factually unsupported inferences or presumptions," the State need not produce direct

---

[6] *Brooks v. State*, 323 S.W.3d 893, 902 n.19 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

[7] *Id*.

[8] *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981).

[9] *Hooper*, 214 S.W.3d at 13.

[10] *Brooks*, 323 S.W.3d at 899 n.13; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

[11] *Clayton*, 235 S.W.3d at 778.

evidence to prove its case.[12] Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone may be sufficient to support a jury's finding that the defendant is guilty of the crime on which he was tried.[13] In our review, each fact need not point directly to the defendant's guilt as long as the cumulative force of the incriminating circumstances offer sufficient support for the jury's determination that the defendant is guilty.[14] And while "the parties may disagree about the logical inferences that flow from undisputed facts, [w]here there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous."[15]

In Singleton's case, the jury heard testimony from several police officers. Two of the officers described their respective experiences with investigations involving criminal gangs. As previously noted, one of the officers testified that Singleton is a member of *Hustling Under Pressure* and is affiliated with *5400 Rand Street Soldiers*. The other officer testified that Singleton is a member of *Hustling Under Pressure*. The jury heard testimony describing the system police use to classify groups as criminal street gangs. The jury also heard testimony stating that the police have

---

[12] *Hooper*, 214 S.W.3d at 15-16.
[13] *Jenkins v. State,* 493 S.W.3d 583, 599 (Tex. Crim. App. 2016).
[14] *Hooper,* 214 S.W.3d at 13.
[15] *Evans v. State*, 202 S.W.3d 158, 163 (Tex. Crim. App. 2006).

classified *Hustling Under Pressure* and *5400 Rand Street Soldiers* as criminal street gangs in databases used and relied on by police departments to investigate gang-related crimes.[16] The officers testified that *Hustling Under Pressure* is a gang with operations in greater Houston. According to one of the officers, Singleton met the following four criteria used by police to determine whether a crime was committed while an individual was as a member of a gang: (1) Singleton admitted gang membership on a prior occasion, which did not involve a judicial proceeding; (2) a reliable informant or other individual identified Singleton as a member of the criminal street gangs previously described; (3) an informant or other individual of unknown reliability corroborated Singleton's identification as a gang member; and (4) police had arrested Singleton or taken him into custody with other known street gang members for other offenses or conduct that, according to the officers, was suggestive of activity in a criminal gang.[17]

The evidence the jury considered in the trial includes photographs from Kenneth Robinson's social media account. One of the officers testified that Robinson is a member of the gangs *Hustling Under Pressure* and *5400 Rand Street Soldiers*. Singleton is depicted in pictures taken from Robinson's account with other

---

[16] *See* Tex. Code Crim. Proc. Ann. art. 67.051.
[17] *See id*. art. 67.054(b)(2)(C).

8

people who the officer testified were known by police to be members of *Hustling Under Pressure* or the *5400 Rand Street Soldiers*. In one of the photos, Singleton is standing by Jeremiah Lowe. According to the testimony of one of the officers, Lowe is a founding member of *Hustling Under Pressure*. The photo, which was copied from Robinson's social media account, is captioned "Just like brothers." In another of the photos, Singleton is standing in front of a gas station with several other men. The officer testified that the gas station is frequented by members of *5400 Rand Street Soldiers*. The officer testified that the men standing in the photo with Singleton are also known members of that gang. In closing argument, Singleton's attorney suggested the evidence existed because Singleton grew up in the area so he knows people who are members in gangs.

Singleton argues the evidence admitted in the trial is insufficient to allow the jury to infer that *Hustling Under Pressure* and *5400 Rand Street Soldiers* continually or regularly engage in criminal activity. Building upon that premise, Singleton concludes the testimony by the officers that classified the two groups as criminal street gangs is so conclusory it is unreliable and without probative force. We disagree with Singleton's premise and his conclusion. The evidence shows that Singleton and persons known to be members of one of these two gangs robbed a bank customer shortly after that customer left a bank in 2016. The jury also heard the testimony of

a detective with the Miami-Dade Police Department, who explained that in 2015, the Miami-Dade police arrested Singleton for his role in robbing a bank customer after following the customer from the bank. Singleton was subsequently convicted, in Florida, for his role in that theft. According to one of the officers employed by the Houston Police Department, the other individual with whom Singleton was arrested in Florida belongs to the *5400 Rand Street Soldiers*. We conclude the evidence describing Singleton's gang membership and gang-related activities allowed the jury to infer, as a reasonable factfinder, that in January 2018, when Singleton broke into the officer's SUV to take the money bag from her car, he was a member of at least one criminal street gang.

We also reject Singleton's argument claiming the evidence is insufficient to allow the jury to tie the theft from the officer's SUV to Singleton's membership in a criminal gang.[18] To connect the two, the State needed to prove "some nexus or relationship between the commission of the underlying offense and the defendant's gang membership."[19] But proving such a nexus did not require the State to introduce evidence proving exactly why Singleton attempted to steal the money bag from

---

[18] *See id*. art. 71.02(a).

[19] *Zuniga v. State*, 551 S.W.3d 729, 739 (Tex. Crim. App. 2018); *see also Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017).

inside the SUV.[20] To decide if the evidence is sufficient to establish the required nexus, we review the evidence before the jury in the trial to determine whether there is enough evidence for which the jury could reasonably infer that Singleton broke into the SUV to steal the money bag while Singleton was "acting pursuant to his role or capacity" as a member of a criminal street gang.[21]

We conclude the answer is yes. Here, the jury heard evidence that Singleton belongs to gangs with reputations for targeting bank customers seen leaving banks. The evidence shows that Price, who drove the getaway car and was involved in the theft, is also a member of a gang. Singleton had a prior conviction for a robbery that involved bank jugging, and the evidence also allowed the jury to conclude that the theft involved others who were members of criminal gangs. We find the record contains enough evidence to allow the jury to infer that Singleton committed the theft from the officer's SUV in his role as a member of a criminal gang.[22] Because Singleton's first issue lacks merit, it is overruled.

---

[20] *See id.*

[21] *Id.*

[22] *See* Tex. Code Crim. Proc. Ann. art. 38.04; Tex. Penal Code Ann. § 71.02; *see also Brooks*, 323 S.W.3d at 902 n. 19; *Clayton*, 235 S.W.3d at 778; *Hooper*, 214 S.W.3d at 13.

11

## Evidence of Prior Arrests

For convenience, we address issue three before addressing the arguments that Singleton raises in his second issue. In issue three, Singleton argues the trial court erred by admitting testimony from a detective employed by the Miami-Dade Police Department and a police officer employed by the Houston Police Department to testify about the circumstances behind several of Singleton's prior arrests. During the trial, Singleton's attorney objected to the evidence and asked the trial court to exclude it under Rule 404(b). Rule 404(b) is a Rule of Evidence that generally prohibits a party from introducing evidence about crimes or other bad acts "to prove that on a particular occasion the person acted in accordance with the character or trait."[23] During the trial, the State argued the evidence about Singleton's prior arrests was admissible to rebut Singleton's claim that he was not a member of any criminal street gangs and to proving Singleton engaged in an organized criminal activity when he broke into the officer's SUV. Singleton also argued the evidence of the arrests would be more prejudicial than it was probative to proving the elements associated with the crime of engaging in organized criminal activity.[24]

---

[23] Tex. R. Evid. 404(a).
[24] *See id*. 403.

The trial court conducted a hearing outside the presence of the jury to decide whether to admit the evidence about Singleton's prior arrests. When the hearing ended, the trial court ruled that the State could introduce evidence describing the circumstances behind three of Singleton's prior arrests because, during the trial, Singleton's attorney had implied while cross-examining witnesses before the jury that Singleton was not a member of a street gang. In his brief, Singleton argues the trial court should not have admitted the evidence describing his prior arrests because the trial court was incorrect about whether his attorney had opened the door to this evidence when cross-examining the State's witnesses. According to Singleton, his attorney had the right to cross-examine the State's witnesses to rebut their suggestions claiming Singleton belongs to criminal gangs.

We review a defendant's complaint about a ruling in admitting or excluding evidence using an abuse-of-discretion standard.[25] Thus, in deciding whether any error occurred, the defendant must establish the ruling that is the subject of his

---

[25]*See Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018) (explaining that appellate courts review rulings admitting evidence under an abuse of discretion standard); *Dabney v. State*, 492 S.W.3d 309, 318 (Tex. Crim. App. 2016) (stating that appellate courts review rulings admitting evidence about a defendant's other crimes, wrongs, or acts under an abuse of discretion standard).

complaint on appeal was one that "lies outside the zone of reasonable disagreement."[26]

Generally, "[e]vidence of extraneous offenses is not admissible during the guilt phase of a trial to prove that the defendant committed the charged offense in conformity with a bad character."[27] Yet there are many exceptions to this rule.[28] When the defendant is indicted for engaging in organized criminal activity, evidence of his prior arrests when the prior arrests involve other gang related activity may be admitted if the defendant's attorney, either in opening statement or during the cross-examination of some witness, suggests the defendant is not in a gang.[29] In Singleton's trial, Singleton's attorney asked the State's first witness, a Houston police officer, whether every defendant the officer had arrested for jugging involved gang activity and whether "jugging is possible without being a member of a gang." When on direct, the officer had testified that Singleton, in the officer's opinion, is a member of a criminal street gang. Nonetheless, the questions we noted above, as well as others, are the reasons the trial court concluded that Singleton's attorney,

---

[26] *See Gonzalez*, 544 S.W.3d at 370.

[27] *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011) (citing Tex. R. Evid. 404(b)).

[28] Tex. R. Evid. 404(b)(2).

[29] *See Patterson v. State*, 496 S.W.3d 919, 929 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd).

14

through questioning the officer, was implying that Singleton was not in a gang. While it is debatable whether these types of questions were asked merely to rebut opinions about Singleton's membership in gangs, or whether instead the questions informed the jury of Singleton's defense—his claim that he never belonged to a gang—the trial court's ruling is one that falls in the zone of reasonable disagreement. For that reason, we find no abuse of discretion occurred when the trial court allowed the State to introduce evidence describing Singleton's prior, gang-related, arrests.

We further conclude the trial court did not abuse its discretion when it found the evidence more probative than prejudicial, not merely cumulative, of other evidence that suggests Singleton is a member of criminal gangs.[30] Courts must balance four factors under Rule 403 to decide whether to admit evidence over an objection under Rule 403.[31] These factors are (1) the probative value the evidence has in the specific case, (2) the potential the evidence has in the case to impress the jury in some irrational but indelible way, (3) the time needed by the party that desires to offer the evidence during the trial, and (4) how badly the party that wants to introduce the evidence needs it to meet its burden of proof at trial.[32]

---

[30] Tex. R. Evid. 403.
[31] *Id.*
[32] *See Colone v. State*, 573 S.W.3d 249, 266 (Tex. Crim. App. 2019).

Here, the State needed to prove that, when Singleton broke into the SUV to take the money bag , he committed the theft as a member of a criminal street gang.[33] Thus, the trial court could have reasonably concluded that evidence showing Singleton had on prior occasions participated in other crimes involving others known to be members of criminal gangs was some evidence that the offense on which he was tried was one committed to further some activity associated with his gang.[34]

It did not take much time for the State to develop the evidence related to Singleton's prior arrests, and it was not unnecessarily cumulative of other evidence admitted in the trial. The evidence describing Singleton's prior arrests suggests those crimes occurred in similar contexts, thefts from customers shortly after the customers left the bank. Because the thefts have similarities, thefts from bank customers that involved multiple individuals belonging to criminal gangs, we agree

---

[33] *See* Tex. Penal Code Ann. § 71.02.

[34] *See Patterson*, 496 S.W.3d at 930 (explaining that evidence relevant to defendant's gang membership admissible when the evidence was relevant to the defendant's motive in committing the murder at issue in his trial); *Hernandez v. State*, 52 S.W.3d 268, 282 (Tex. App.—Corpus Christi 2001, no pet.) (in a case in which the State charged the defendant with engaging in an organized criminal activity, overruling complaint in the appeal challenging the trial court's ruling admitting evidence revealing other instances connecting the defendant with activities associated with a street gang); *Roy v. State*, 997 S.W.2d 863, 867 (Tex. App.—Fort Worth 1999, pet. ref'd) (explaining the trial court had the discretion to admit activity, evidence showing the defendant had, on prior occasions, engaged in gang-related activities when the defendant was on trial under an indictment charging him with engaging in organized criminal activity).

with the trial court's implied finding that the evidence was highly probative. The trial court also sought to ensure that the jury did not get an irrational impression from the evidence describing Singleton's prior arrests. For instance, the court refused to allow the State to introduce all the evidence that it wanted to introduce about each of Singleton's prior arrests. In the charge, the trial court instructed the jury that it could not consider testimony describing Singleton's prior offenses or bad acts unless it found he committed those offenses beyond reasonable doubt. Even more, the trial court instructed the jury that it could consider the evidence only when evaluating Singleton's motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

We conclude the trial court did not abuse its discretion by admitting the evidence describing Singleton's prior arrests. Because no abuse of discretion occurred, we overrule Singleton's third issue.

Appellate Record

In issue two, Singleton argues the trial court erred when it failed to require the court reporter to create a record sufficient to allow him to show the method the trial court used to respond to several questions the jury sent the trial court while the jury was deliberating its verdict. To support his argument, Singletons relies on article 36.27 of the Code of Criminal Procedure. Article 36.27 requires that trial courts

respond to the questions sent to it by a jury when it is deliberating "in open court unless expressly waived by the defendant."[35] Article 36.27 also states that all proceedings in felony cases "shall be a part of the record and recorded by the court reporter."[36]

Here, the clerk's record shows that while it was deliberating on guilt, the jury sent the trial court these four questions: (1) "How many times has [Singleton] self-admitted to be[ing] a gang member during or after arrest[;]" (2) "How many times has [Singleton] be[en] identified as a gang member by a police officer[;]" (3) "Do they have a legacy green card on him, if so when was it written? We would like [Sergeant Ponder] testimony during direct[;]" and (4) "How many documented members in [*Hustling Under Pressure*]." While deliberating on punishment, the jury sent the trial court one more question, asking "What happens if we can't come to [a] unanimous decision[.]" The Clerk's Record shows the trial court responded to the jury's last question by instructing the jury "[y]our decision must be unanimous. Please continue deliberate." The District Clerk placed copies of the above five questions and the trial court's response to the last question in the Clerk's Record.

---

[35] *See* Tex. Code. Crim. Proc. Ann. art. 36.27.
[36] *Id*.

18

That said, the questions and the court's answer to the last question do not appear in the record the court reporter created of the proceedings.[37]

In response to Singleton's argument, the State suggests the record "is silent as to whether the trial court notified Singleton of [the] questions." As we understand the State's argument, the State claims Singleton cannot now show what the trial court did in response to the first four of the above questions. As to the last of the questions, the State argues the trial court responded in writing, as reflected in the Clerk's Record, and its response did not amount to a new instruction that altered the instructions the trial court had already given the jury in the charge. Given the record that exists, the State concludes Singleton cannot now establish whether he suffered any harm.

While article 36.27 is mandatory, "it is incumbent upon a defendant to bring the easily correctable error to the judge's attention by objection or formal bill of exception or the acts of the trial court are presumed consistent with the statute."[38] The record does not show that Singleton ever asked the trial court to assemble the jury in open court in response to the first four questions, which we described above. Singleton also failed to bring the trial court's attention to his complaint by objecting

---

[37] *Id.*
[38] *See Smith v. State*, 513 S.W.2d 823, 829 (Tex. Crim. App. 1974).

19

to the manner the court handled its response or by filing a bill of exception showing that the trial court never notified his attorney about whether the court intended to respond to the questions and if so, how it intended to handle its response. And, while the trial court apparently responded to the fifth question, a question the jury sent the court while deliberating on Singleton's punishment, the written response the trial court made to that question, which is in the Clerk's Record, did not provide the jury with any new information that went beyond the instructions the trial court already had given the jury in the charge.[39]

To preserve complaints for appellate review, the record must show the complaining party made the trial court aware of the complaint through a timely request, objection, or motion that stated the grounds for the ruling the party wanted unless they were apparent from the context.[40] "It is usually the appealing party's burden to present a record showing properly preserved, reversible error."[41]

We conclude Singleton has not established that he did not agree to waive his right to have the trial court address the questions the jury sent the trial court before all parties while in open court. We further conclude that Singleton has not shown

---

[39] *See McGowan v. State*, 664 S.W.2d 355, 358 (Tex. Crim. App. 1984).
[40] *See* Tex. R. App. P. 33.1(a); *Lovill v. State,* 319 S.W.3d 687, 691-92 (Tex. Crim. App. 2009).
[41] *Word v. State*, 206 S.W.3d 646, 651-52 (Tex. Crim. App. 2006).

how he was harmed even if he did not waive his right to have the trial court address the jury's written questions in open court.[42] To hold in Singleton's favor would require that we speculate to what occurred, and to conclude, based on our speculation, that the manner the trial court handled the questions violated the requirements of article 36.27.[43] We cannot speculate our way to a ruling reversing the trial court's judgment. For that reason, we overrule Singleton's second issue because it was not preserved properly for our review.

Conclusion

We hold that Singleton's issues are either without merit or not properly preserved for our review. For those reasons, we affirm Singleton's conviction and the trial court's judgment.

AFFIRMED.

_____
HOLLIS HORTON
Justice

---

[42] Tex. Code Crim. Proc. Ann. art. 36.27.

[43] *Id*. (directing the trial court to answer communications from the jury in open court unless the defendant expressly waives that right); *see also Word,* 206 S.W.3d at 652 (finding that the defendant waived his complaint about the court reporter's failure to record the manner the court handled responding to the written questions the jury sent the court while deliberating when the defendant failed to object at trial to the court reporter's failure to provide him with a record of all the proceedings in the trial).

Submitted on August 10, 2020
Opinion Delivered October 28, 2020
Do Not Publish

Before McKeithen, C.J., Kreger and Horton, JJ.